833 So.2d 1061 (2002)
TITLESITE, L.C., Plaintiff
v.
Frederick Fletcher WEBB, III, et al., Defendants.
No. 36,437-CA.
Court of Appeal of Louisiana, Second Circuit.
December 11, 2002.
*1062 Walker, Tooke & Lyons, by Henry Clay Walker, Shreveport, for Defendant/Appellant, Mattie Lou Brown.
Weiner, Weiss, Madison, by Geoffrey D. Westmoreland, Shreveport, for Plaintiff/Appellee, Titlesite, L.C.
Boggs & Thompson, Bossier City, by Jefferson R. Thompson, for Defendants/Appellees, Frederick Webb, Ruben Webb, John Webb, Paul Webb, Mark Webb, and Allison Webb; Sherwood Loe, Jr., Mae Fisher, Linda Suggs, Barbara DeSimone, Julia Lowry, John Wann, Jr., and John Wann, Sr.
Powell Law Firm, APLC, by Walter William Gerhardt, Shreveport, for Defendant/Appellee, K. Quay McMullan.
Before CARAWAY, DREW and HARRISON (Pro Tempore), JJ.
DREW, J.
In this concursus proceeding to determine the ownership of a $5,000 deposit and original documents related to a property sale contract, Mattie Lou Brown appealed an amended judgment directing the Caddo Parish Clerk of Court to cancel and revoke two documents filed in the Conveyance Records. We observe that the portion of the amended judgment dealing with recision of the partition deeds is unsupported in the record by evidence or agreement of parties. Our review of the record, the pleadings and the scant evidence therein has revealed that this judgment is a partial judgment under La. C.C.P. art.1915. This appeal is dismissed as premature, and the matter is remanded to the trial court for further proceedings.
Piecemeal appeals are a waste of judicial resources and are not favored. Under La. C.C.P. art. 1915(B), certain partial final judgments may be appealed if designated as a final judgment by the trial court after its express determination that there is no just reason for delaying an immediate appeal. However, the appellate court may review a trial court's decision to certify a partial judgment and dismiss the appeal if the certification was improper. When the trial court gives reasons for the certification, the appellate review is whether the trial court abused its discretion. If a trial court does not give reasons for the certification, the appellate court makes a de novo review to determine if the certification is appropriate. See discussion, Custom-Bilt Cabinet & Supply, Inc. v. Quality Built Cabinets, Inc., 32,441 (La.App.2d Cir.12/9/99), 748 So.2d 594. The interests of judicial efficiency and economy of court resources will be served by these parties obtaining a final judgment disposing all issues among them before again seeking appellate review of this matter.
This case arises from a failed real estate transaction concerning a 227.336 acre tract of land in Caddo Parish. The tract was owned in indivision by a group of 15 persons *1063 including Mattie Lou Brown, the appellant. In August and September of 1999, the co-owners entered a contract to sell 152.49 acres of the land to a single buyer, K. Quay McMullan. McMullan placed a $5,000 deposit on the property transaction.
The contract in part provided that one of the co-owners, Mattie Lou Brown, would receive from the other co-owners (hereinafter referred to as the Webb Group) all of their undivided interest in a 15.16-acre portion of the total tract in exchange for her interest in the remaining 212.176 acres.[1] This exchange required the co-owners to execute a partition agreement. After the partition, the Webb Group would complete the sale of the 152.49 acres to McMullan from the 212.176 tract.
Additionally, the contract included a 120-day inspection period, extendable "at least thirty (30) days or as needed under the circumstances ..." upon notice 10 days prior to the expiration of the period, to allow the buyer to conduct a feasibility study and an environmental study. McMullan exercised her right to an extension in December 1999. In February 2000, McMullan was notified that the sale was set for closing. McMullan did not appear at closing. The closing agent filed this concursus proceeding, seeking a determination of who was entitled to the $5,000 deposit and to whom certain original documents belonged.
During the course of this litigation, McMullan transferred her interest in the contract to buy and sell to a realtor, who, in turn, transferred his interest in the transaction to Mattie Lou Brown, one of the original co-owners and the appellant here.

PLEADINGS
Titlesite, L.C. filed a concursus proceeding against the undivided owners (the Webb Group plus Mattie Lou Brown) of a 227.336 acre tract in Caddo Parish and K. Quay McMullan, who contracted to purchase *1064 a portion of the tract. Titlesite alleged:
 In a contract to buy and sell entered into on or about August 10, 1999, McMullan and the 14 undivided owners contracted for McMullan to buy 152.49 acres.
 McMullan paid a deposit of $5,000.
 In an April 3, 2002, letter[2], the attorney for the sellers advised McMullan the closing was scheduled at 2:00 p.m. on February 25, 2000, at the United Title of Louisiana, Inc. offices.
 Further, the sellers asserted that McMullan breached the contract by failing to appear at the closing.
 The 14 undivided owners contended they were entitled to a forfeiture of the $5,000 deposit held in escrow by Titlesite.
 McMullan countered that she did not breach the contract and objected to the release of funds.
 Titlesite placed the funds in the registry of the court and sought to have the defendants ordered to assert their claims contradictorily.
In their answer to the concursus filed August 29, 2000, the Webb Group made a reconventional demand against K. Quay McMullan. The Webb Group alleged:
 McMullan was liable to forfeit the $5,000 earnest money under the Contract to Buy and Sell in § 8.2 Sellers Remedies.
 § 7.1 of the Contract to Buy and Sell contemplated a partition of certain property among the undivided owners. Damages may result from McMullan's actions in obtaining or recording deeds in expectation of enforcing the provisions of § 7.1, which is now moot. Therefore, McMullan is liable to the Webb Group for costs associated with remedial measures required to return the ownership to the status quo prior to the Contract to Buy and Sell.
 Those damages would be addition to damages arising from McMullan's non-performance of the contract.
 The Webb Group sought a determination that McMullan had breached the Agreement, judgment for $5,000 and an award for all costs associated with remedying changes in ownership interests among the undivided co-owners.
On September 25, 2000, Titlesite filed a first amended petition which corrected the spelling of two names of undivided owners and incorporated the eight paragraphs of the original petition. In addition, Titlesite alleged that Titlesite possessed original documents held in escrow pursuant to the agreement of the parties. Titlesite sought leave to deposit the original documents in the registry of the court and impleaded all parties to assert their claims to the documents. On September 28, 2000, the Webb Group answered Titlesite's first amended petition.
On October 3, 2001, Brown filed an "Answer to Petition for Concursus and for Declaratory Judgment," attached a copy of the Contract to Buy and Sell (Agreement), and asserted:
 The Agreement between the sellers and McMullan in Article 19.1 provided the effective date of the Agreement "shall mean the date when a copy of this contract is executed by the last SELLER signatory," and Webb's date of execution was 9/9/99.

*1065  Article 6.1 of the Agreement clearly and unambiguously provided that the term of the Agreement shall run for 120 days or until January 8, 2000, within which term McMullan was to perform appraisals, environmental evaluations and other due diligence.
 Article 6.2 of the Agreement clearly and unambiguously provided that McMullan could obtain an extension of at least 30 days as needed for rezoning or wetlands determination.
 McMullan's December 2, 1999, letter to the Webb Group formed the basis for an extension under Article 6.2.
 McMullan's February 24, 2000, letter to the co-owners set forth the basis for an additional extension to perform a wetlands evaluation.
 A February 17, 2000, letter from William Peatross to McMullan set the time of closing at 2:00 p.m., Friday, February 25, 2000, pursuant to § 17.1 of the Agreement.
 The ex parte setting of closing, the manner of notification and the selection of the closing attorney disregarded §§ 6.1 and 6.2.
As a plaintiff-in-reconvention, Brown asserted that:
 McMullan assigned and transferred her right, title and interest covering the entire Agreement to a realtor on February 6, 2001.
 The realtor then assigned and conveyed the Agreement dated August 9, 1999, and effective September 9, 1999, to Brown as of June 28, 2001.
 McMullan, the realtor and Brown have adhered to all contractual obligations.
Brown's pleadings did not contain a prayer for any particular relief.

NOVEMBER 12, 2001, HEARING ON CONCURSUS
The attorney for the Webb Group and the attorney for Brown (to whom McMullan assigned her rights) agreed at the outset that after putting on evidence, they would obtain a partial consent judgment. The Webb Group attorney explained in argument to the trial court that:
 Originally, the undivided co-owners of the tract were to have a voluntary partition leaving Brown with a piece of the property. The partition arrangement was at the back of the contract.
 The co-owners planned to sell to McMullan.
 It was contemplated that the documents would be executed and recorded at the time the deed was.
 § 6.1 of the contract signed in August 1999 gave McMullan 120 days to perform feasibility studies.
 § 6.2 of the contract provided that the feasibility study period could be extended 30 days within 10 days prior to the expiration of the original time.
 On December 2, 1999, McMullan exercised the extension.
 On February 17, 2000, the attorney with United Title notified McMullan that the closing was set for February 25, 2001.
 McMullan did not appear at the closing; the attorney for United Title notified McMullan that her failure to appear put her in default under the contract, which was terminated, and made the default provisions applicable; i.e., forfeiture of $5,000 earnest money.
 The Webb Group sought a determination that the contract was terminated by McMullan's default and that voluntary partition documents executed in *1066 contemplation of the sale were supposed to have been held until closing.
 Some documents were recorded because they were not held by the Webb Group's attorney or through inadvertence. Those documents needed to be cancelled or determined to have no effect; the attorneys for the Webb Group and Brown did not know at the hearing how many were actually recorded.
 Brown may have given up some of her interest in the rest of the property to receive sole ownership in a piece; documents executed and recorded that changed ownership prior to the date of the contract needed to be rescinded, and the parties were going to have to take responsibility to make sure that gets done.
The Webb Group's attorney then asked if that was "pretty accurate," to which Brown's attorney stated to the court, "That's accurate." The trial court informed both attorneys: "You're going to have to do that by deed. That's not something I can do." The Webb Group's attorney responded that he needed a court order to force the parties to sign the deeds. The trial court stated: "I can't change the title."
As rebuttal, the attorney for Brown argued to the trial court that:
 The effective date of the contract to buy and sell was September 9, 1999, and McMullan sought an extension on December 2, 1999.
 § 6.2 of the contract stated: "The seller agrees to grant purchaser an extension of the inspection period of at least 30 days or as needed under the circumstances if necessary in securing a rezoning classification or a wetlands determination."
 On February 24, 2000, McMullan advised the sellers she was availing herself of the extension period for a wetlands determination for 30 days or as needed.
 Therefore, on February 24, 2000, McMullan was not in default because she needed to resolve the wetlands problem.
 The key issue was who was in default.
 The February 25, 2000, closing was an ex parte closing contrary to § 17, which provided that the buyer and seller would agree on a time and place.
 Through her attorney, Brown agreed that the parties should be taken back to where they were, but disputed that the $5,000 deposit should go to the sellers.
The Webb Group's attorney pointed out that if the $5,000 were forfeited to the sellers, a portion would go to Mattie Lou Brown, one of the original co-owners who contracted with McMullan.

TRIAL COURT'S JUDGMENTS
In a judgment signed November 21, 2001, the trial court ruled:
... the purchaser breached the contract by failing to complete the sale with (sic) 15 days after the expiration of the extension of the inspection period, and the money deposited in the registry of the court in these proceedings is to the paid by the Clerk of Court to the "sellers" in proportion to their respective interests in the property as stipulated by them.
Notice of the judgment was sent on November 26, 2001.
Aside from the motion and order for the withdrawal of Brown's counsel of record, the next filing is an amended judgment signed January 24, 2002, in which the trial court stated the matter came before the court on a Concursus Petition and the court had considered the evidence, argument *1067 and law. The trial court then repeated the foregoing paragraph from the November 21, 2001, judgment. In addition the judgment ordered, adjudged and decreed:
... the voluntary acts of partition prepared in connection with the contract and contemplated as a part of the sale are null and void, and the Clerk of Court is hereby ordered to cancel and revoke those certain documents recorded as Instrument number 1781994 in Conveyance Book 3506 at Page 130-150; and Instrument number 1682532 in Conveyance Book 3361 in Page 164-1890.
ORIGINAL JUDGMENT READ, RENDERED AND SIGNED in chambers on the 21st day of November 2001, and this amended Judgment read, rendered and signed in chambers on the 24th day of January, 2002.
Notice of the judgment was sent on March 1, 2001. Attached to the judgment (but not in evidence or a part of the record on appeal) was correspondence among the parties and their attorneys indicating the partition documents were to be held in escrow until the closing of the sale to McMullan and that, should the sale not close, the unrecorded partitions were to be returned to the title company.
Brown filed an appeal from the final judgment. The order granting the appeal referred to an appeal from the amended judgment signed January 24, 2002. On April 4, 2001 on motion by Brown, her suspensive appeal was converted to a devolutive appeal.

PROCEDURAL MATTERS IN APPELLATE COURT
After the record was lodged, this court on May 23, 2002, directed the parties to show cause why the appeal should not be dismissed as untimely, since no motions for new trial or appeal were filed following the November 26, 2001, notice of the November 21, 2001, judgment. The amended January 24, 2002 judgment repeated the substance of the initial judgment and added relief concerning the partitions, which was not sought by the appellant, Brown.
The attorney for Brown responded that she appealed only that portion of the amended judgment rescinding the partition deeds and that she could not have appealed during the 60-day delay following the initial judgment, since more than 60 days elapsed between the initial November 21, 2001, judgment and the amended January 24, 2002, judgment. By order of June 13, 2002, this court recalled its show cause order and ordered the appeal maintained on the docket. In addition, appellant was directed to show cause whether this was a prohibited substantive amendment under Stevenson v. State Farm, 624 So.2d 28 (La.App.2d Cir.1993).

DISCUSSION
This litigation commenced as a concursus proceeding, which is governed by La. C.C.P. art. 4651 et seq. C.C.P. art. 4656 provides:
Each defendant in a concursus proceeding is considered as being both a plaintiff and a defendant with respect to all other parties. No exceptions or responsive pleadings may be filed to the answer of a defendant, and every fact alleged therein is considered as denied or avoided by effect of law as to all other parties. If a defendant fails to answer, issue need not be joined by default.
The closing agent initiated the proceedings to determine who should receive the $5,000 deposit made by McMullan and amended its petition to determine to whom original documents belonged. Both the funds and the documents were deposited in the registry of the court. The record does not contain the exact nature of the "original *1068 documents" about which the title company sought relief and does not resolve that portion of the concursus. We presume the "original documents" placed in the court's registry pertain to the partition contemplated by the contract among the parties. Since both the initial judgment and the "amended judgment" left the document issue in the concursus unresolved, both judgments are partial ones.
In answering the concursus, the Webb Group asserted (in what they styled a reconventional demand) that § 7.1 of the contract contemplated a partition among the co-owners and that damages may have resulted from McMullan's acts in obtaining and/or recording deeds prepared in anticipation of completing the terms of the contract. The Webb Group asserted McMullan would be liable for costs associated with remedial measures required to "return the ownership of the subject property to owners in the ownership interest as it existed prior to entering the Agreement." Among the relief for which the Webb Group prayed was for "all costs associated with remedying any changes in the ownership interest of the WEBB FAMILY members by the actions of K. Quay McMullan as it relates to the partition contemplated in the agreement...."
The initial judgment ruled that McMullan breached the contract and directed that the Clerk of Court pay the deposited money to the "sellers" in proportion to their respective interests. That judgment and the identical provisions in the amended judgment are not an issue in this appeal, which is limited to a dispute over whether the partition documents recorded in the Conveyance Records of Caddo Parish should be rescinded. However, the Webb Group never specifically sought recision of the partitions in their pleadings, which instead sought an award for all costs associated with remedying changes in ownership interests among the undivided co-owners.
Brown's pleadings did not seek to have the partition maintained and contained no prayer for relief. Yet on appeal, Brown argued the portion of the amended judgment cancelling the partition deeds should be reversed because:
 The contract was designed with the partitions in mind, and the contract was clearly contingent on the partition.
 No language in the contract made the partitions contingent on the contract.
 The partition deeds were voluntary.
The Webb Group essentially argued in brief on appeal that the parties intended this to be a consent judgment holding that the contract had been breached by the buyer and that the voluntary partitions were part of the intended sale and were to be annulled. That argument is belied by the argument of counsel at the hearing. Although there were initial references to a consent judgment, the Webb Group's attorney sought a determination that the contract was terminated by McMullan's default and that the partition documents needed to be rescinded. In contrast, Brown's attorney stated that Brown denied that she was in default and that the $5,000 deposit should go to the sellers. Further, her trial counsel stated that Brown agreed the parties should be taken back to where they were. Trial counsel for Brown withdrew prior to the entry of the amended judgment. Her counsel on appeal argues that the partition deeds should be maintained on the public records. Clearly, there is no basis that the parties agreed to a consent judgment regarding the status of the partition.
It is well settled that pursuant to La. C.C.P. art. 2164, an appellate court must render its judgment upon the record on appeal. The record on appeal is that *1069 which is sent by the trial court to the appellate court and includes the pleadings, court minutes, transcript, judgments and other rulings. The appellate court cannot review evidence that is not in the record on appeal and cannot receive new evidence. Memoranda and exhibits not filed in evidence are not part of the record on appeal. The briefs of the parties and the attachments thereto are not part of the record on appeal. Further, this court does not consider exhibits filed in the record which were not filed into evidence. Tranum v. Hebert, 581 So.2d 1023 (La.App. 1st Cir.1991), writ denied, 584 So.2d 1169 (La.1991).
Present in the record after the amended judgment are documents which were presumably presented to the trial court in support of the amended judgment, although there was no hearing, no stipulation and no indication these documents were filed into evidence. Therefore, the documents are not part of the appellate record and were not considered by this court. As noted previously, there are also no clear pleadings in the appellate record for the portion of the amended judgment pertaining to the partition deeds. As "plaintiffs" under the provision of La. C.C.P. art. 4656, they must pray for relief regarding the partition.
This court in Stevenson, supra, cited La. C.C.P. art.1951, which allows amendment of final judgments at any time to alter phraseology, but not the substance, or to correct errors in calculation. Therefore, a trial court may amend a final judgment so long as the change takes nothing from or adds nothing to the original judgment. As a general rule, a final judgment is not subject to substantive amendment on motion of the trial court or any party. The appropriate action is a timely application for new trial or timely appeal. An improperly amended judgment containing substantive changes is an absolute nullity. Stevenson, supra. If this court viewed the November 21, 2001, judgment as a final judgment, then the January 24, 2002, judgment which contains substantive changes clearly would be a nullity to be given no effect. As it is, the "amended judgment" is unsupported by the contents of this record. Further, we conclude that the "amended judgment" is an uncertified partial judgment because unresolved issues remain pending among the parties. Moreover, the initial judgment is also a partial judgment for the same reason.
The unresolved issues among these parties include a decision on the "original documents" placed at issue in the concursus. Therefore, the appeal from the uncertified partial judgment is premature. Further, the parties are instructed that further appeals from any partial judgments, certified or not, would be piecemeal litigation which is contrary to judicial efficiency in this dispute. This matter is remanded for further proceedings in which the parties may amend their pleadings and seek a contradictory hearing to litigate the unresolved issues among them. If necessary, an appeal may be taken from a judgment which finally resolves all pending issues among the parties.

CONCLUSION
The appeal from this uncertified partial judgment is dismissed as premature. The matter is remanded to the trial court for further proceedings in which all pending issues between the parties should be resolved.
Costs are assessed against appellant and appellees equally.
APPEAL DISMISSED AS PREMATURE. REMANDED.
NOTES
[1] 7. AGREEMENT SUBJECT TO PARTITION OF MATTIE L. BROWN'S INTEREST

7.1 PARTITION. The SELLERS shall execute a Voluntary Act of Partition on the form and in conformity with the substance of the form for partition as contained in "EXHIBIT B" which is incorporated and made a part hereof for all purposes to this Contract. Such voluntary partition shall be executed at a mutually convenient date within five (5) days following the execution of all parties, both SELLERS and PURCHASER, of this CONTRACT TO BUY AND SELL or no later than on a date contemporaneous with the execution of the Deed at Closing covering the 152.49 acre tract described herein. The Voluntary Act of Partition will partition the entirety of the approximate 227.336 acre tract as described therein in the proportions as follows:
(a) To MATTIE L. BROWN, a general warranty deed of all co-owners' right, title and interest (14/15) which results in a conveyance in fee simple to the said MATTIE L. BROWN of the approximate 15.16 acre tract as delineated on plat labeled "EXHIBIT C" annexed and made a part hereof for all purposes; and
(b) From MATTIE L. BROWN, a general warranty deed of her right, title and interest to an undivided one-fifteenth (1/15) interest in fee simple of the approximate 212.176 acre tract representing the balance of the area held in co-ownership with MATTIE L. BROWN and the SELLERS as delineated on plat labeled "EXHIBIT D" annexed and made a part hereof for all purposes.
It is clearly and distinctly understood that the inducement of PURCHASER in the execution of this agreement is predicated on the execution of all co-owners of the said Voluntary Act of Partition. The offer of purchase to the PROPERTY is conditioned and made subject to the timely execution thereof by the SELLERS of the Voluntary Act of Partition.
[2] In fact, the attached letter was dated April 27, 2000, and was from the Webb Group's attorney, who stated that the April 3, 2000 letter informed McMullan that the contract was terminated and her deposit forfeited. The Webb Group demanded that the $5,000 in escrow be paid to the sellers.