# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 10-1341

**STATE OF LOUISIANA AND THE
VERMILION PARISH SCHOOL BOARD**

**VERSUS**

**THE LOUISIANA LAND AND EXPLORATION
COMPANY, ET AL.**

## C/W 11-843

**STATE OF LOUISIANA**

**VERSUS**

**LOUISIANA LAND AND EXPLORATION, ET AL.**

## C/W 11-1016

**STATE OF LOUISIANA, ET AL.**

**VERSUS**

**LOUISIANA LAND AND EXPLORATION, ET AL.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 82,162
HONORABLE JEROME M. WINSBERG, JUDGE AD HOC

\*\*\*\*\*\*\*\*\*\*

## OSWALD A. DECUIR
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Oswald A. Decuir, Billy Howard Ezell, and James T. Genovese, Judges.

**REVERSED AND REMANDED.**

**Donald T. Carmouche**
**Victor L. Marcello**
**John H. Carmouche**
**William R. Coenen, III**
**John St. DuPont**
**Brian T. Carmouche**
**Ross J. Donnes**
**D. Adele Owen**
**Talbot, Carmouche & Marcello**
**17405 Perkins Road**
**Baton Rouge, LA 70810**
**(225) 400-9991**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
    **State of Louisiana**
    **Vermilion Parish School Board**

**Grady J. Abraham**
**Attorney at Law**
**P.O. Drawer 2309**
**Lafayette, LA 70502-2309**
**(337) 234-4523**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
    **State of Louisiana**
    **Vermilion Parish School Board**

**Calvin E. Woodruff, Jr.**
**Attorney at Law**
**P.O. Box 520**
**Abbeville, LA 70511-0520**
**(337) 898-5777**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
    **State of Louisiana**
    **Vermilion Parish School Board**

**L. Victor Gregoire**
**Michael R. Phillips**
**Linda S. Akchin**
**Alan J. Berteau**
**Kean Miller, LLP**
**P.O. Box 3513**
**Baton Rouge, LA 70821**
**(225) 387-0999**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Chevron U.S.A., Inc.**
    **Carrollton Resources, LLC**
    **Chevron Midcontinent, LP**
    **Union Oil Company of California**
    **Union Exploration Partners**

**K. Wade Trahan**
**Ottinger Hebert, L.L.C.**
**P.O. Drawer 52606**
**Lafayette, LA 70505-2606**
**(337) 232-2606**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Chevron U.S.A., Inc.**
    **Carrollton Resources, LLC**
    **Chevron Midcontinent, LP**
    **Union Oil Company of California**
    **Union Exploration Partners**

**Robert G. Meadows**
**Carol M. Wood**
**Shelby E. Wilson**
**King & Spalding**
**1100 Louisiana Street, Suite 4000**
**Houston, TX 77002-5213**
**(713) 751-3200**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Chevron U.S.A., Inc.**
    **Carrollton Resources, LLC**
    **Chevron Midcontinent, LP**
    **Union Oil Company of California**
    **Union Exploration Partners**

**DECUIR, Judge.**

In this environmental remediation case, the State of Louisiana and the Vermilion Parish School Board contest three adverse rulings by three separate courts. These three matters have been consolidated for this appeal.

## FACTS

The State of Louisiana and the Vermilion Parish School Board (hereinafter collectively "School Board") seek remediation of a polluted sixteenth section of property in Vermilion Parish owned by the State and managed by the Vermilion Parish School Board. The pollution is alleged to be extensive and to be a threat to the fish, wildlife, and the safety of the seafood supply in the White Lake area. The Defendants are: Union Oil Company of California and Union Exploration Partners (collectively "Unocal"), Carrolton Resources, LLC, Chevron U.S.A., Inc., and Chevron Midcontinet, L.P. A mineral lease was granted on the property in 1935, and oilfield operations commenced in 1940.

Unocal admitted that it was responsible for environmental damage on the property and filed a motion to refer the case to the Louisiana Department of Natural Resources (LDNR) as required by Act 312 of 2006. *See* La.R.S. 30:29(c). The School Board objected, arguing that such a referral could not take place until all of the Defendants admitted responsibility, and the private claims were tried to the jury. The trial court agreed with the School Board. Unocal sought writs in this court (CW10-666) and the supreme court (2010-CC-1796). These writ applications were denied. *See Germany v. ConocoPhillips Co.*, 07-1145 (La.App. 3 Cir. 3/5/08), 980 So.2d 101, *writ not considered*, 08-1161 (La. 9/19/08), 992 So.2d 960; *Bernard v. BP Am. Prod. Co.*, 07-1249 (La.App. 3 Cir. 4/2/08), 981 So.2d 73; *Tensas Poppadoc, Inc. v. Chevron USA Inc.*, 07-727 (La.App. 3 Cir. 5/21/08), 984 So.2d 223. (Holding that such a conclusion is in accord with this

court's prior holding that an oilfield remediation case should be tried in its entirety before the case is referred to the LDNR).

Unocal then filed a motion for partial summary judgment limiting the School Board's remediation damage claims to the amount needed to fund the "feasible plan" mandated by Act 312. Unocal argued that Act 312 acts as a substantive cap on remediation damages resulting from a tort or the implied restoration obligation of a mineral lease. The trial court agreed.

The School Board filed a writ application to this court which was denied (CW10-1310). While the writ application was under consideration, the School Board filed a motion in the trial court seeking to have Act 312 declared unconstitutional as applied. This motion was denied. The trial court's rulings on the motion for partial summary judgment and the motion to have Act 312 declared unconstitutional were certified as final judgments. The School Board lodged an appeal (CA11-843).

In the second of the consolidated matters before us, the School Board filed a writ to this court (CW10-1341), alleging that the trial court erred in allowing Chevron U.S.A., Inc. to amend its answer to reverse its prior admission that it was a successor in interest to Unocal. Prior to this court acting on the writ, the trial court ordered a limited deposition concerning the relationship between Chevron U.S.A., Inc. and Unocal. After the deposition, the trial court granted Chevron U.S.A., Inc.'s motion for summary judgment and dismissed it from the suit. The School Board filed a suspensive appeal (CA11-1016) from the trial court's judgment. This court granted the School Board's writ application for the sole purpose of consolidating it with the School Board's suspensive appeal of the trial court's grant of summary judgment in favor of Chevron U.S.A., Inc., and both

2

these matters were consolidated with the School Board's appeal from the partial summary judgment in favor of Unocal.

## GRANT OF PARTIAL SUMMARY JUDGMENT RELATING TO EXCESS REMEDIATION DAMAGES

The School Board contends that the trial court erred in granting partial summary judgment in favor of Unocal. Specifically, the School Board argues that the trial court erred in limiting remediation damages to the amount required to implement the "feasible plan" as determined under Act 312. We agree.

An appellate court reviews summary judgments de novo, applying the same criteria as the district court in determining whether summary judgment is appropriate. *Schroeder v. Bd. of Supervisors of Louisiana State Univ.*, 591 So.2d 342 (La.1991). A motion for summary judgment is properly granted when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B).

In this case, we are called upon to decide a dispute between the parties over the interpretation of Act 312 of 2006, specifically La.R.S. 30:29. We must decide whether Act 312 of 2006 limits the amount of Plaintiff's recoverable remediation damages to the cost of the "feasible plan" selected through application of La.R.S. 30:29.

The interpretation of a statutory provision starts with the language of the provision itself. *Sabine Parish Police Jury v. Comm'r of Alcohol & Tobacco Control*, 04-1833 (La. 4/12/05), 898 So.2d 1244.

> "When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law, "and the meaning of ambiguous words" must be sought by examining the context in which they occur and the text of the law as a whole." La.Civ.Code arts. 10 and 12;

*Sabine*, 898 So.2d at 1250. However, "[w]hen a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written, and no further interpretation may be made in search of the intent of the legislature."

La.Civ.Code art. 9; *Sabine*, 898 So.2d at 1250.

Louisiana Revised Statutes 30:29 provides in pertinent part (emphasis added):

> ### § 29. Remediation of oilfield sites and exploration and production sites
>
> A. The legislature hereby finds and declares that Article IX, Section 1 of the Constitution of Louisiana mandates that the natural resources and the environment of the state, including ground water, are to be protected, conserved, and replenished insofar as possible and consistent with the health, safety, and welfare of the people and further mandates that the legislature enact laws to implement this policy. *It is the duty of the legislature to set forth procedures to ensure that damage to the environment is remediated to a standard that protects the public interest.* To this end, this Section provides the procedure for judicial resolution of claims for environmental damage to property arising from activities subject to the jurisdiction of the Department of Natural Resources, office of conservation. The provisions of this Section shall be implemented upon receipt of timely notice as required by Paragraph (B)(1) of this Section. *The provisions of this Section shall not be construed to impede or limit provisions under private contracts imposing remediation obligations in excess of the requirements of the department or limit the right of a party to a private contract to enforce any contract provision in a court of proper jurisdiction.*
>
> . . . .
>
> (5) The court shall adopt the plan approved by the department, unless a party proves by a preponderance of the evidence that another plan is a more feasible plan to adequately protect the environment and the public health, safety, and welfare. The court shall enter a judgment adopting a plan with written reasons assigned. Upon adoption of a plan, the court shall order the party or parties admitting responsibility or the party or parties found legally responsible by the court to fund the implementation of the plan.
>
> (6)(a) Any judgment adopting a plan of evaluation or remediation pursuant to this Section and ordering the party or parties admitting responsibility or the party or parties found legally responsible by the court to deposit funds for the implementation thereof into the registry of the court pursuant to this Section shall be considered a final judgment pursuant to the Code of Civil Procedure Article 2081 et seq., for purposes of appeal.

(b) Any appeal under this Section shall be a de novo review and shall be heard with preference and on an expedited basis.

(c) The appellate court may affirm the trial court's adoption of a plan or may adopt a feasible plan in conformity with this Section and shall issue written reasons for its decision.

. . . .

G. *The provisions of this Section are intended to ensure evaluation or remediation of environmental damage.* If the court finds that no environmental damage exists, the court may dismiss the department or attorney general from the litigation without prejudice.

H. *This Section shall not preclude an owner of land from pursuing a judicial remedy or receiving a judicial award for private claims suffered as a result of environmental damage, except as otherwise provided in this Section. Nor shall it preclude a judgment ordering damages for or implementation of additional remediation in excess of the requirements of the plan adopted by the court pursuant to this Section as may be required in accordance with the terms of an express contractual provision. Any award granted in connection with the judgment for additional remediation is not required to be paid into the registry of the court.* This Section shall not be interpreted to create any cause of action or to impose additional implied obligations under the mineral code or arising out of a mineral lease.

The judgment of the trial court and arguments of Unocal notwithstanding, we find the language of the statute to be clear and unambiguous. On the issue of whether an owner of land may recover remediation damages in excess of those provided under the feasible plan, section H of La.R.S. 32:90 (emphasis added) provides the answer: "This section shall not preclude an owner of land from pursuing a judicial remedy *or receiving a judicial award for private claims suffered as a result of environmental damage*, except as otherwise provided in this Section." The clear language of the statute contemplates the landowner receiving an award in addition to that provided by the feasible plan.

Unocal would have us focus on the next sentence of the section which refers to additional remediation damages available by express contractual agreement. Unocal argues that this is the only additional remediation damage which a

landowner may recover. This argument completely ignores the fact that the sentence starts with the phrase: "Nor shall it preclude." Thus, the first provision guarantees the landowners' right to seek a judicial remedy and protects the landowners' right to recover for private claims. The second provision provides that the landowners' rights to recover additional damage under the terms of a contract are protected. Accordingly, we reject Unocal's argument and hold that La.R.S. 30:29, by its clear language, provides for a landowner to recover damages in excess of those determined in the feasible plan whether they be based on tort or contract law. The judgment of the trial court granting partial summary judgment in favor of Unocal is reversed.

Though we have found the language of the statute to be clear and unambiguous and need not determine legislative intent, we note that the statute is clear on its face in that regard as well. It specifically provides, "[i]t is the duty of the legislature to set forth procedures to ensure that damage to the environment is remediated to a standard that protects the public interest" and "[t]he provisions of this Section are intended to ensure evaluation or remediation of environmental damage." La.R.S. 30:29(A) & (G). Arising from the supreme court's clear language in *Corbello v. Iowa Prod.*, 02-826 (La. 2/25/03), 850 So.2d 856, regarding the lack of a legislative scheme to protect the public interest in the remediation of oilfield lands, Act 312 provides a vehicle for the State to intervene in private litigation. In so doing, the private interests of the landowner are juxtaposed against the public interest of the State in order to insure that remediation is actually carried out. However, the statute does not require the State to intervene, nor does it preclude the State from taking independent civil or administrative action regardless of the outcome of the private litigation. La.R.S. 30:29(B). We do not see, nor does Unocal demonstrate, how allowing landowners

to recover excess remediation damages thwarts the express purpose of the statute. To the contrary, limiting the landowners' damages would seem to remove some of the incentive for a landowner to engage in the costly and extended litigation necessary to resolve this type of claim.

Likewise, we find Unocal's reliance on *Marin v. Exxon Mobil Corp.*, 09-2368 (La. 10/19/10), 48 So.3d 234, for the proposition that the School Board's recovery of tort damages for restoration is limited to the regulatory standard in Act 312, is misplaced. In *Marin,* the court first found that the plaintiff's tort claims had prescribed. In this case, Unocal has not alleged prescription. Accordingly, the comments of the court in *Marin* regarding the possible damages available to the plaintiffs for restoration or remediation are inapplicable. The availability of such damages to the School Board will depend on the facts and circumstances of the case.

We need not address the School Board's argument that Act 312 is unconstitutional as applied by the trial court because we have overturned the lower court's judgment.

## SUMMARY JUDGMENT IN FAVOR OF CHEVRON U.S.A.

The School Board next contends that the trial court erred in allowing Chevron U.S.A., Inc. to amend its pleadings and in granting summary judgment dismissing them from the case. We agree.

This suit was filed in September 2004, and Chevron U.S.A., Inc. was named as a defendant via amended petition in 2007. In October 2008, Chevron U.S.A., Inc. filed an answer stating that it is a successor in interest to Unocal. Chevron U.S.A., Inc. participated in the lawsuit until 2010 when it sought leave to amend its answer to state that it is not a successor in interest to Unocal. The trial court granted leave to amend and, after allowing the School Board a limited deposition

7

on the issue of Chevron U.S.A., Inc.'s successor status, granted Chevron U.S.A., Inc.'s motion for summary judgment and dismissed them from the case.

We find that the trial court erred in granting summary judgment in this case. It seems, at the very least, that there is a genuine issue of material fact as to whether Chevron U.S.A., Inc. is a successor in interest to Unocal. It took Chevron U.S.A., Inc. three years to determine that it had erred in its initial declaration that it was a successor in interest to Unocal. In making its determination, Chevron U.S.A., Inc. relied, at least in part, on the contents of service agreements that it maintained with Unocal. The School Board has not had access to these agreements and was allowed only a very limited deposition regarding the successor status of Chevron U.S.A., Inc.

### DECREE

For the foregoing reasons, the judgment of the trial court granting partial summary judgment on the issue of remediation damages is reversed. In addition, the judgment of the trial court granting summary judgment and dismissing Chevron U.S.A., Inc. from the case is reversed. The case is remanded for further proceedings in both instances. All costs of these proceedings are taxed equally among the Defendants.

**REVERSED AND REMANDED.**