Jerold Edward Knoll, The Knoll, Law Firm, L.L.C., Post Office Box 426, Marksville, Louisiana 71351, (318) 253-6200, COUNSEL FOR PLAINTIFFS/APPELLANTS: State of Louisiana, Vermilion Parish School Board
Russell Karl Zaunbrecher, Edwards, Stefanski & Zaunbrecher, Post Office Drawer 730, Crowley, Louisiana 70527, (337) 783-7000, COUNSEL FOR PLAINTIFFS/APPELLANTS: State of Louisiana, Vermilion Parish School Board
Grady Joseph Abraham, Attorney at Law, 5040 Ambassador Caffery Parkway, Suite 200, Lafayette, Louisiana 70508, (337) 234-4523, COUNSEL FOR PLAINTIFFS/APPELLANTS: State of Louisiana, Vermilion Parish School Board
William R. Coenen, III, Talbot, Carmouche & Marcello, 17405 Perkins Road, Baton Rouge, Louisiana 70810, (225) 400-9991, COUNSEL FOR PLAINTIFFS/APPELLANTS: State of Louisiana, Vermilion Parish School Board
Calvin Eugene Woodruff, Jr., Cooper & Woodruff, 220 South Jefferson Street, 3rd Floor, Abbeville, Louisiana 70510, (337) 898-5777, COUNSEL FOR PLAINTIFF/APPELLANT: Vermilion Parish School Board
Louis Victor Gregoire, Jr. Kean, Miller LLP, 400 Convention Street, Suite 700, Baton Rouge, Louisiana 70802, (225) 387-0999, COUNSEL FOR DEFENDANTS/APPELLEES: Chevron Midcontinent, L.P., Chevron USA, Inc. Carrollton Resources, LLC, Union Exploration Partners, LP, Union Oil Company of California, (collectively, "UNOCAL")
Kevin Wade Trahan, Ottinger, Hebert, L.L.C., Post Office Drawer 52606, Lafayette, Louisiana 70505, (337) 232-2606, COUNSEL FOR DEFENDANTS/APPELLEES: Chevron Midcontinent, L.P., Chevron USA, Inc., Carrollton Resources, LLC, Union Exploration Partners, LP, Union Oil Company of California, (collectively, "UNOCAL")
Michael R. Phillips, Kean, Miller LLP, 909 Poydras Street, Suite 3600, New Orleans, Louisiana 70112, (504) 585-3050, COUNSEL FOR DEFENDANTS/APPELLEES: Chevron Midcontinent, L.P., Chevron USA, Inc., Carrollton Resources, LLC, Union Exploration Partners, LP, Union Oil Company of California, (collectively, "UNOCAL")
Robert E. Meadows, King & Spalding, LLP, 1100 Louisiana Street, Suite 4000, Houston, Texas 77002, (713) 751-3200, COUNSEL FOR DEFENDANTS/APPELLEES: Chevron Midcontinent, L.P., Chevron USA, Inc., Carrollton Resources, LLC, Union Exploration Partners, LP, Union Oil Company of California, (collectively, "UNOCAL")
Thomas E. Balhoff, Roedel Parsons Koch Blache Balhoff & McCollister, 8440 Jefferson Highway, Suite 301, Baton Rouge, Louisiana 70809, (225) 929-7033, COUNSEL FOR DEFENDANT/APPELLEE: Louisiana Department of Natural Resources
Court composed of Ulysses Gene Thibodeaux, Chief Judge, Shannon J. Gremillion, and John E. Conery, Judges.
CONERY, Judge.
*1261 In this oilfield remediation case, the Vermilion Parish School Board (VPSB), in its own right and on behalf of the State of Louisiana, appeals a judgment dated November 3, 2016, adopting the Louisiana Department of Natural Resources' (LDNR) most feasible plan for remediation of property damaged by oil and gas exploration and production on Section 16 property in Vermilion Parish owned by the State of Louisiana and managed by VPSB.[1] Additionally, the judgment attaches as Exhibit B, by reference only, twenty-seven written questions VPSB sent to LDNR about the plan and LDNR's answers, and makes them part of the record. The LDNR final plan obligates the defendant/appellee, Union Oil Company of California (UNOCAL), to pay for and perform the remediation work required by the plan. VPSB argues that the twenty-seven questions and answers should have been made part of the LDNR plan itself and part of the judgment, not simply part of the record. VPSB further argues that it is the proper party to be obligated to perform the remedial work ordered in the judgment. For the following reasons, we affirm the trial court judgment in its entirety.
Facts and Procedural History
The property at issue is owned by the State of Louisiana and managed by VPSB. The property consists of 1200 acres of mostly submerged wetlands located in the southern part of Vermilion Parish, approximately twelve miles north of the Gulf of Mexico and one-half mile east of White Lake and can only be accessed by boat. UNOCAL or its assigns performed oil and gas exploration and production activity for over fifty years on the property.
VPSB filed suit against UNOCAL and others in 2004 for environmental damage to the property.[2] VPSB included in its suit, and subsequent amended petitions, a demand for specific performance seeking to have the court order UNOCAL, et al. to remediate or "clean up" oil field waste and contamination on the property. In 2013, this case was before us on an appeal from a partial summary judgment limiting damages to the actual cleanup costs. See *1262 State v. La. Land and Exploration Co. , 10-1341, 11-843, 11-1016 (La.App. 3 Cir. 2/1/12), 85 So.3d 158. Pertinent to this discussion, a panel of this court held that a landowner could "recover remediation damages in excess of those provided under the feasible plan" for remediation. Id. at 162. Our opinion was affirmed by the supreme court in State v. La. Land and Exploration Co. , 12-884 (La. 1/30/13), 110 So.3d 1038, and the case was remanded to the trial court for trial on the merits on all issues.
Background
The factual background of this case and the legislative history and purpose of the Oilfield Remediation Statute, commonly referred to as "Act 312" and codified in 2006 as La.R.S. 30:29, which we are applying herein, was covered in detail in our and the supreme court's earlier decisions and were reviewed at some length in the supreme court opinion.[3] The supreme court stated in La. Land and Exploration Co. , 110 So.3d at 1048-53 (footnotes omitted) (alteration in original):
We noted [in Corbello v. Iowa Prod. , 02-826 (La. 2/25/03), 850 So.2d 686,] the legislature had not implemented "a procedure to ensure that landowners will in fact use the money [for remediation costs] to clean the property." [ Corbello , 850 So.2d at 699.] We recognized the two opposing public policy concerns which the then-existing state of the law created. At that time, a landowner suing for remediation of contaminated land could sue and receive remediation damages, yet was under no obligation to use the damage award to restore the property. At the same time, there was a strong possibility that land would remain polluted if landowners could not bring suit for remediation. Id. [at 701].
Interpretation of La. R.S. 30:29
In Corbello , we observed plaintiffs who were awarded remediation damages were under no statutory obligation to perform remediation work. The purpose of Act 312 was to create such an obligation. In Act 312, the legislature provided a mechanism whereby the landowner does not receive that portion of the remediation award needed to fund the statutorily mandated plan to remediate the property to a point that protects the public's interest. As the following analysis will show, Act 312 ensures the damages awarded for remediation will be used only for remediation to the extent necessary to fund the statutorily required plan , into which the La. DNR has input, and which is ultimately approved by the court.
We agree with the court of appeal the language of Act 312 is clear and unambiguous. We will presently describe each section of the Act, but its overall effect is this: The procedure described under the Act does not interfere with private rights, whether they arise contractually or by law. The procedure under the Act does not prohibit the award of remediation damages for more than the amount necessary to fund the statutorily mandated feasible plan, nor does the procedure described in the Act intrude into the manner in which remediation damages are determined. The Act makes no changes to the normal trial procedures established by the Code of Civil Procedure. The only change accomplished by Act 312 is how the damages to remediate property are spent. Under Act 312, landowners do not receive that portion of the remediation damages award needed to fund the statutorily mandated feasible plan; these funds must be deposited *1263 into the registry of the court. Finally, although the La. DNR has input into the plan to remediate the property, the final decision as to the remediation plan adopted rests with the court. Throughout the remediation process, the court remains the gatekeeper to ensure the purpose of the Act is accomplished-remediation of the property to the extent of the public's interest ....
Subsection C of the statute sets forth the additional, mandated procedures to be used for the determination of a remediation plan post-trial, as well as the appellate review of those determinations .... If at trial the finder of fact determines environmental damage exists and determines the party or parties who caused the damage or who are otherwise legally responsible for the damage, the court orders the party or parties responsible to develop a remediation plan to be submitted to the court and the department. Deadlines are provided for such submissions in the statute. Id. The plaintiff and any other party are allowed to submit remediation plans to the department. Id.
Thereafter, the department holds a public hearing on the submissions. La. R.S. 30:29(C)(2). Within a time set by the statute, the department determines, based on evidence submitted, the most feasible plan to accomplish the evaluation/remediation of the environmental damage while protecting the health, safety and welfare of the public. Id. By mandating that "applicable standards" shall be used and applied in approving or structuring the most feasible plan to evaluate or remediate the environmental damage, the legislature has not limited the department to any one standard in its development of the most feasible plan. La. R.S. 30:29(C)(3). The plan approved by the department is not to be considered an adjudication subject to appellate review. La. R.S. 30:29(C)(4).
Instead, the plan approved by the department is sent to the court for its review. The plaintiff or any other party may submit its own plan, comment or input in response, within a certain time frame. La. R.S. 30:29(C)(1). Unless a party proves by a preponderance of evidence that another plan is a more feasible plan, the court shall adopt the plan approved by the department. If the court enters a judgment adopting a plan other than the one approved by the department, the court shall assign written reasons. Once a plan is determined, the court shall order the party or parties admitting responsibility or found legally responsible by the court to fund the implementation of the plan. In making this determination, the court will decide how much of the damages are to be used for remediation of the property. La. R.S. 30:29(C)(5). (Emphasis added.)
The court's judgment adopting a plan of evaluation or remediation and ordering the legally responsible parties to deposit funds into the court's registry shall be considered a final judgment for appeal purposes. La. R.S. 30:29(C)(6)(a).
UNOCAL conceded it caused environmental damage to the property.[4] After a lengthy jury trial on damages and remediation costs in April and May of 2015, the jury returned a 3.5 million dollar verdict in favor of VPSB and against UNOCAL for environmental damages to the property. We do not have the trial court record of that decision and the merits of that decision are not before us. The issues in this appeal concern only the procedural implementation of the remediation obligation of UNOCAL pursuant to Act 312, La.R.S. 30:29, which governs how monetary *1264 awards for environmental damages are spent.[5]
As discussed by the supreme court, infra, and as specifically set forth in the 2006 version of the statute at issue, first, a defendant who has admittedly caused, or has been found to have caused, environmental damage to property must submit a plan for remediation of the damage to the LDNR. La.R.S. 30:29(C)(1). The plaintiff may also submit a plan for the LDNR's consideration. La.R.S. 30:29(C)(1). The LDNR then conducts a public evidentiary hearing.[6] La.R.S. 30:29(C)(2)(a). After the hearing, the LDNR considers any plans properly submitted and ultimately issues its own plan, which may or may not approve and adopt all or part of either submitted plan. The LDNR plan must be the plan it finds to be the "most feasible plan" within the meaning of La.R.S. 30:29(C)(2)(a).[7]
In July 2016, the LDNR panel released its final remediation plan for the property in question. The plan addressed six separate areas of soil and sediment contamination and seven areas of groundwater contamination. In areas where data was sufficient, the plan recommended how and to what degree each section was to be remediated. In areas where the data was insufficient, the plan required additional testing and evaluation. It also estimated the cost of implementing the plan as written at one million four hundred eleven thousand, one hundred and ninety dollars ($1,411,190.00). Its estimate did not include costs of remediation once the required additional evaluations were performed and sufficient data was received. The plan ordered UNOCAL to fund and perform the remediation work as set forth in the plan.
VPSB did not directly challenge the LDNR plan or request an additional preponderance hearing under La.R.S. 30:29(C)(5).[8] Instead, VPSB sent twenty-seven written questions to LDNR after the plan was released that sought interpretation and clarification of the plan. The LDNR panel answered these questions in writing and specifically conditioned their use as a clarification tool only . LDNR made clear that "[w]hile these answers do *1265 not alter the MFP [ (most feasible plan) ] in any way, we are hopeful they will provide the requested and desired clarity to the MFP." (Emphasis added).
The parties then filed competing motions to adopt their respective proposed judgments as the court's most feasible plan. Both proposed judgments adopted the LDNR plan as the judgment of the court. However, the parties disputed specific language in the proposed judgments, and their motions to adopt were set for hearing. At the "judgment hearing," the pertinent issues presented to the trial court for its consideration were: (1) whether and/or how to incorporate the written questions and answers between VPSB and LDNR into the judgment and; (2) which party should perform the remediation and evaluations recommended in the plan. Counsel for both parties participated in the hearing and were given more than ample opportunity to argue their respective positions to the trial court. During the hearing, the trial judge made clear that the questions and answers provided by LDNR to Plaintiffs, at their request, "should be part of the record, but they do not alter the plan as indicated by LDNR. They do not alter the plan in any way. " (Emphasis added).
Ultimately, the trial court rendered judgment on November 3, 2016, adopting the LDNR plan as written and attached the written questions and answers as Exhibit B to the judgment and made them part of the record. The judgment further obligated UNOCAL to fund and perform the remedial work and evaluations set forth in the plan. VPSB filed a timely appeal. Finding the trial court's ruling was legally correct, we affirm.
Assignments of Error
VPSB alleges the trial court erred by:
1) Denying the Motion to Adopt VPSB's Proposed Form of Judgment Regarding Most Feasible Plan.
2) Granting Unocal's Motion to Enter Judgment Regarding Most Feasible Plan.
3) Entering a Judgment on November 3, 2016 allowing Unocal to implement the work identified in the [M]ost [F]easible [P]lan.
4) Denying the VPSB's request to implement the work identified in the Most Feasible Plan.
5) Failing to comply with the [s]upreme [c]ourt's ruling in State v. Louisiana Land and Exploration Co. [, 12-884 (La. 1/30/13), 110 So.3d 1038.]
Standard of Review
We review La.R.S. 30:29 cases under the de novo standard of review. La.R.S. 30:29(C)(6)(b). In performing a de novo review, "the appellate court must review the record in its entirety, giving no special weight to the trial court's determinations." Kyle v. Kier , 17-134, (La.App. 3 Cir. 11/15/17), 233 So.3d 708, 715. "[U]nder the de novo standard of review, the appellate court ... review[s] the record in its entirety to determine whether the trial court's decision was legally correct in light of the evidence." Domingue v. Bodin , 08-62, p. 2 (La.App. 3 Cir. 11/5/08), 996 So.2d 654, 656 (citations omitted). In our review, we may either "affirm the trial court's adoption of a plan or may adopt a feasible plan in conformity with this Section and shall issue written reasons for [our] decision." La.R.S. 30:29(C)(6)(c).
Law and Discussion
Assignments of Error Numbers 1-4 all address the same legal issue and will be considered together.
Louisiana Revised Statutes 30:29(C)(5) (emphasis added) states, in pertinent part:
The court shall adopt the plan approved by the department, unless a party *1266 proves by a preponderance of the evidence that another plan is a more feasible plan to adequately protect the environment and the public health, safety, and welfare.
We find this language to be clear and unambiguous.[9] Absent proof by a preponderance of the evidence that another plan is more feasible than the LDNR's plan, La.R.S. 30:29(C)(5) mandates that the court adopt the LDNR plan. In this case, the evidentiary hearing required before the trial court could adopt another plan was never requested (and therefore never took place).
There is no statutory authority for VPSB to modify LDNR's plan by attacking the trial court's form of judgment. However, even though VPSB did not timely object to the LDNR plan and request a "preponderance hearing" in accordance with La. R.S. 30:29(C)(5), the trial judge nevertheless did in fact conduct a lengthy contradictory hearing at which it heard extensive argument on whether to adopt the VPSB proposed judgment in this case.
After thoughtfully considering all of the concerns and arguments put forth by VPSB, the trial court decided to adopt the LDNR plan as the most feasible plan. It also allowed the clarification questions that VPSB had asked to LDNR and LDNR's answers to be attached to LDNR's plan as well as to the trial court's judgment. In its oral reasons, the trial court made it clear. "While LDNR's answers to VPSB's questions do not alter the most feasible plan in any way, as LDNR acknowledges, the answers clarify the most feasible plan." Hence the questions and answers at issue are already attached to the trial court's final judgment and we agree with the trial court that the questions and "answers clarify the most feasible plan."
Keeping in mind that LDNR and the trial court maintain jurisdiction to conduct additional hearings and issue supplemental rulings, and after full de novo review, we find no error in the trial court's decision to adopt the form of judgment proposed by UNOCAL with the VPSB questions and LDNR's answers attached to the judgment at issue.
Performance of Remediation Work by UNOCAL:
VPSB strenuously argued at its requested hearing on the form of the judgment that the trial court adopt its proposed form of judgment ordering VPSB to perform the remediation in the LDNR plan. No evidence was presented on this issue, only argument by counsel. We need not decide here whether this hearing was a "preponderance hearing" required by La.R.S. 30:29(C)(5) or not. The one-hundred plus page transcript of the attorneys' arguments in the trial court on this issue fully demonstrates that the trial judge conducted a contradictory hearing and thoughtfully considered all of VPSB's concerns about UNOCAL's actually performing the work discussed in the plan and its request that it be authorized to perform the remediation.
One of the main purposes of Act 312 was to remove from the landowner the right to receive a portion of the remediation damages and require the party at fault to fund remediation of the environmental damages caused by its operation on a landowner's property. As a panel of this court stated in Savoie v. Richard , 13-1370, pp. 8-9 (La.App. 3 Cir. 4/2/14), 137 So.3d 78, 86, writ denied , 14-1283, 14-1287 (La. 11/14/14), 152 So.3d 880 (emphasis added), "[t]he remedy for remediation to state regulatory standards is no longer a private money award, but rather specific performance of the remediation to those *1267 state standards that serve the public interest."
Nevertheless, VPSB alleges the portion of the judgment in this case specifically obligating UNOCAL to perform the work set forth in the plan, separate and apart from any obligations contained within the plan, is in error. VPSB's assertions that they should be allowed to perform the work is not supported by statutory law, jurisprudence, or by the LDNR final plan adopted by the trial court. VPSB has not cited any cases in which the plaintiff was obligated to perform the work set forth in the plan and no independent review revealed any. In fact, in this case, the supreme court earlier stated in its opinion that the lessee is responsible for cleaning up its messes:
[T]he duty to remediate oilfield containment exists under the prudent operator standard of the Mineral Code by virtue of our holding in [Terrebonne Parish Sch. Bd. v. ] Castex [Energy Inc. , 04-968 (La. 1/19/05), 893 So.2d 789], and it certainly exists under the Civil Code. The holding in Castex merely recognized that in absence of unreasonableness or excessiveness, the lessee has the duty to restore the surface minus normal wear and tear.
La. Land and Exploration Co. , 110 So.3d at 1057, (quoting Marin v. Exxon Mobil Co. , 09-2368 (La. 10/19/10), 48 So.3d 234, 259-60 ).
Additionally, the plan itself specifically calls for UNOCAL to perform the work.[10] In adopting the LDNR plan as the court's judgment, the trial court necessarily adopted those provisions specifying UNOCAL implement the remediation work. Even if the trial court's judgment did not explicitly state that UNOCAL was to perform all the remedial work, compliance with the provisions of the plan as adopted would produce the same result.
Insofar as VPSB references actions taken by either party in furtherance or delay of the plan's implementation, we cannot consider these allegations. We are limited to a review of the record available to the trial court at the time it rendered its decision. See State v. Hoffpauir , 17-416 (La.App. 3 Cir. 11/2/17), 232 So.3d 670, 674 (quoting Titlesite, L.C. v. Webb , 36,437, p. 12 (La.App. 2 Cir. 12/11/02), 833 So.2d 1061, 1068-69 ).[11]
The statute itself provides for the procedures by which VPSB can insure that the remediation is done properly. Louisiana Revised Statutes 30:29(F) provides: "[t]he court and the department shall retain oversight to ensure compliance with the plan. The party or parties admitting responsibility, or the party or parties found legally responsible by the court shall file progress reports periodically as the court or the department may require. " (Emphasis added.) Since the trial judge and LDNR have continuing jurisdiction over implementation of the plan, any concern that VPSB may have as to the performance of the remediation work by UNOCAL can be brought to LDNR's and the trial court's attention in subsequent proceedings. The record reveals that at the *1268 time the trial judge signed the judgment approving the plan, it was fully aware of the concerns of VPSB as to whether UNOCAL would properly implement the plan. The trial judge specifically allowed the "questions and answers" between VPSB and LDNR to form part of the record and attached it to its judgment for further clarification during the plan's implementation. Continuing jurisdiction allows LDNR and the trial judge to maintain and control the plan's implementation and issue such subsequent orders as may be appropriate. The legislature has clearly and specifically given that authority to LDNR and the trial court, with the trial judge as the final decision maker, subject to the appellate court's de novo review. On de novo review, we find no error in the trial court's ruling.
Assignment of Error No. 5-Interpretation of State v. Louisiana Land and Exploration Co.:
Finally, VPSB also alleges the trial court committed legal error by not following the supreme court's earlier holding in this case in La. Land and Exploration Co. , 110 So.3d 1038. VPSB asserts that the supreme court "ruled that the landowner plaintiff in an Act 312 [ ( La.R.S. 30:29 ) ] case has the right and obligation to perform the cleanup" (emphasis omitted). It arrives at that erroneous conclusion by taking language in the opinion out of context: "['i]n Corbello , we observed plaintiffs who were awarded remediation damages were under no statutory obligation to perform remediation work. The purpose of Act 312 was to create such an obligation.' " (citation omitted) (emphasis omitted). The supreme court did not rule that the plaintiff must perform the remediation work, it merely stated the obvious-the purpose of the statute was to create an obligation to remediate.
Act 312 changes only the procedure for the manner in which remediation damages are spent. The language of the statute itself does not create a right and obligation for the plaintiff to perform the remedial work, though there is likewise nothing in the statute that would specifically prohibit it. The decision on how to implement the most feasible plan is left up to LDNR and, eventually, the trial judge. The supreme court, in its earlier decision in this case, described the "overall effect" of Act 312 as:
The procedure described under the Act does not interfere with private rights, whether they arise contractually or by law. The procedure under the Act does not prohibit the award of remediation damages for more than the amount necessary to fund the statutorily mandated feasible plan, nor does the procedure described in the Act intrude into the manner in which the remediation damages are determined .... The only change accomplished by Act 312 is how the damages to remediate property are spent. Under Act 312, landowners do not receive the portion of the remediation damages award needed to fund the statutorily mandated feasible plan; these funds must be deposited into the registry of the court .... Throughout the remediation process, the court remains the gatekeeper to ensure the purpose of the Act is accomplished-remediation of the property to the extent of the public's interest."
La. Land and Exploration Co. , 110 So.3d at 1049 (emphasis added). The trial court did not misapply the holding of the supreme court. To the contrary, the trial judge was correct to order the responsible party, UNOCAL, to "clean up its mess,"[12]
*1269 all in accordance with the intent of the legislature manifested by the clear and unambiguous language of La.R.S. 30:29. If UNOCAL does not, VPSB has a right to bring any complaints it has to LDNR and the trial court, who retains jurisdiction and "remains the gatekeeper."
CONCLUSION
After carefully reviewing the record, we find the trial court correctly applied the provisions of Act 312, La.R.S. 30:29. The trial court's judgment is affirmed in its entirety. Costs of this appeal are assessed against the Vermilion Parish School Board.
AFFIRMED.
Thibodeaux, Chief Judge, dissents and assigns written reasons.

See Ebey v. Avoyelles Parish Sch. Bd. , 03-765, p. 8 (La.App. 3 Cir. 12/17/03), 861 So.2d 910, 915, for a discussion on the authority of school boards to manage Section 16 property owned by the State, in which the court concluded that:
Section 16 lands are held in trust by the State and managed by school boards 'in the manner of a statutory trustee' for the benefit of public education. The School Board 'shall have the right to administer and use the property for public school purposes,' subject to statutory regulations regarding its sale or lease. La.R.S. 41:638 ; La.R.S. 41:631 et seq.

VPSB filed suit against other defendants in addition to UNOCAL; this appeal only pertains to the judgment in favor of VPSB against UNOCAL. VPSB also asserted private claims for damages in addition to the remediation claims. The private claims were not addressed in the trial court judgment at issue in this appeal and are not before us.

See La. Land and Exploration Co. , 85 So.3d 158. See also La. Land and Exploration Co. , 110 So.3d 1038.

See State v. La. Land and Exploration Co. , 85 So.3d 158.

Id.

In the case before us, "LDNR employees with relevant technical backgrounds sat as a panel" from March 2-4 and March 7-10, 2016. At a public hearing for that purpose, the panel heard the testimony of eight experts, five offered by UNOCAL and three by VPSB. Numerous exhibits were shown to the panel during the hearing and admitted into the record.

Louisiana Revised Statutes 30:29(C)(2)(a) states, in pertinent part:
Within sixty days from the last day on which any party may provide the department with a plan, comment, or response to a plan as provided in Paragraph (C)(1) of this Section, the department shall conduct a public hearing on the plan or plans submitted .... Within sixty days of the conclusion of the hearing, the department shall approve or structure a final plan ... based on the evidence submitted which the department determines to be the most feasible plan to evaluate or remediate the environmental damage and protect the health, safety, and welfare of the people. The department shall issue written reasons for the plan it approves or structures.

Louisiana Revised Statutes 30:29(C)(5) provides:
The court shall adopt the plan approved by the department, unless a party proves by a preponderance of the evidence that another plan is a more feasible plan to adequately protect the environment and the public health, safety, and welfare. The court shall enter a judgment adopting a plan with written reasons assigned. Upon adoption of a plan, the court shall order the party or parties admitting responsibility or the party or parties found legally responsible by the court to fund the implementation of the plan.

La. Land and Exploration Co. , 110 So.3d 1038.

See pages 31, 34, 38-40, 43, and 46-51 of LDNR's final plan.

[A]n appellate court must render its judgment upon the record on appeal. The record on appeal is that which is sent by the trial court to the appellate court and includes the pleadings, court minutes, transcript, judgments and other rulings. The appellate court cannot review evidence that is not in the record on appeal and cannot receive new evidence. Memoranda and exhibits not filed in evidence are not part of the record on appeal. The briefs of the parties and the attachments thereto are not part of the record on appeal. Further, this court does not consider exhibits filed in the record which were not filed into evidence.
Hoffpauir , 232 So.3d at 674.

Senator Adley, introducing Senate bill 655, which eventually became Act 312 and then La.R.S. 30:29, made this comment at a hearing on the bill: "[O]il companies, you've made a mess and you've got to clean it up." S.B. 655, 2006 Leg., Reg. Sess. (La. 2006).