CHARLES R. JONES, Judge.
BThe appellant, Mobile One Auto Sound, Inc. (Mobile One), appeals an adverse judgment of the district court granting the peremptory exception of no cause of action of Whitney National Bank, Mr. Gary Lo-rio, Mr. Harlan Bush, and Mr. Bill Jolly, the named appellees. After a careful re *809 view of the record, we affirm the judgment of the district court.
Mobile One and Whitney entered into a Commercial Business Loan Agreement for Lines of Credit on December 31, 1997. Whitney and Mobile One, on several occasions over the years, mutually agreed to renew or replace the original loan with new loans.
Beginning in 2008, the line of credit of Mobile One was reduced on more than one occasion by Whitney. Mobile One averred that the reduction in the line of credit had a severe effect on its ability to borrow against the line of credit and its ability to conduct business activities.
The subject promissory note matured in May 2009, and the parties executed an allonge to extend the promissory note until June 30, 2009. Mobile One, [¡.however, did not pay the promissory note on June 30, 2009; rather, Mobile One made principal reduction payments and interest payments in July of 2009.
At the end of July of 2009, Mr. Paul Campo, the President of Mobile One, met with Mr. Gary Lorio, a Vice President of Whitney. At the meeting, Mr. Lorio informed Mr. Campo that additional collateral was needed in order for an additional extension of the promissory note to be granted. Mr. Lorio advised Mr. Campo that either the home of Mr. Campo or a payment of $150,000 would be required to extend the promissory note. Mr. Lorio also inquired of Mr. Campo whether a payment would be made. Mr. Campo asked if a $100,000 payment would suffice to make the account current. Mr. Lorio advised Mr. Campo that he would check into the matter and get back to him, but Mr. Lorio also advised Mr. Campo that if additional collateral was not received, that the Mobile One account would be referred to the Special Assets department.
By August of 2009, the Mobile One account had been referred to the “special assets” division of Whitney and assigned to Mr. Bill Jolly, a Vice-President at Whitney.
Mr. Campo then received a phone call from Mr. Harlan Bush, also a Vice President at Whitney. Mr. Bush mentioned to Mr. Campo that he noticed a large number of deposits in the operating account, and further inquired whether Mobile One intended to make a payment on the line of credit. Mr. Campo indicated that the monies contained in the account were earmarked for payments to floor plan creditors. Mr. Bush indicated that the account could be referred to the “special assets” division of Whitney.
13Mr. Jolly contacted Mr. Campo indicating that he had been assigned the account and that he wanted to meet with Mr. Cam-po to discuss the account. On August 14, 2009, Mr. Jolly met with Mr. Campo and informed him that Whitney had withdrawn $600,000 from the Mobile One operating account and applied it to the outstanding loan- balance. Mr. Jolly also handed Mr. Campo a letter indicating same. Also, at the meeting, Mr. Jolly indicated that the zero balance checking account (“ZBA account”) at Wachovia Bank, which was used as a clearinghouse account by Mobile One, had been closed by Whitney.
Mobile One had just issued a check to its floor plan creditors for payment, in addition to payroll checks. However, contemporaneously with the withdrawal of the $600,000 from Mobile One’s operating account, Whitney closed the ZBA account. Mobile One was not able to raise funds to cover the checks it had issued. Mobile One subsequently ceased its business relationship with Whitney.
Mobile One filed a Petition for Damages and Breach of Contract on August 12, 2010. In response, Whitney, Mr. Lorio, *810 Mr. Bush, and Mr. Jolly collectively filed an exception of no cause of action.
At the hearing on the exception, the district court sustained the exception and dismissed the Petition for damages and breach of contract of Mobile One, with prejudice. This timely appeal followed.
In its sole assignment of error, Mobile One argues that the district court erred by sustaining the exception of no cause of action of Whitney, thereby dismissing the Petition of Mobile One with prejudice.

\ .DISCUSSION

In reviewing the judgment of the district court relating to an exception of no cause of action, appellate courts should conduct a de novo review because the exception raises a question of law and the lower court’s decision is based solely on the sufficiency of the petition. Fink v. Bryant, 01-0987, p. 4 (La.11/28/01), 801 So.2d 346, 349; City of New Orleans v. Bd. Of Com’rs of Orleans Levee District, 93-0690, p. 28 (La.7/5/94), 640 So.2d 237, 253. The pertinent question is whether, in the light most favorable to plaintiff and with every doubt resolved in plaintiffs behalf, the petition states any valid cause of action for relief. Wright v. Louisiana Power & Light, 2006-1181, p. 15 (La.3/9/07), 951 So.2d 1058, 1069, citing Ramey v. DeCaire, 03-1299, p. 8 (La.3/19/04), 869 So.2d 114, 118-19. Furthermore, “[n]o evidence may be introduced at any time to support or controvert the objection that the petition fails to state a cause of action.” La.Code Civ. Proc. art. 931.
Mobile One argues that in order for Whitney to pursue any default remedies available to them, Whitney had a contractual and/or statutory duty to give Mobile One notice of any such default; or rather, Whitney was required to “put” Mobile One in default. Mobile One argues that the mere existence of an “event” of default did not place it in default. Mobile One further argues that a declaration of default was exclusively the option of Whitney as is reflected in the applicable terms of the contracts and agreements between the parties.
Mobile One further argues that the “event of default” at the heart of this dispute was its failure to make the payment due on June 30, 2009, as required in the allonge dated May 28, 2009. While Mobile One agrees that there are default |sprovisions throughout the various agreements and promissory notes that comprise the contract at issue, it maintains that in order to properly determine whether Whitney had a duty to give formal notice of default, one must look to the controlling agreements.
In particular, Mobile One argues that the master agreement defines default but does not specify procedures, rights or remedies that could result from any such default; rather, it directs the reader to the loan document. Mobile One argues that there is no mention anywhere in the master agreement of any express waiver of rights by any party. Mobile One argues that Paragraph G of the agreement, entitled Miscellaneous Provisions, reads: “No condition or other term of this Agreement may be waived or modified except by a writing signed by Borrower and Whitney.” Mobile One argues, however, that the promissory note contains different procedures for certain aspects of default, and that some provisions required that Whitney “put” Mobile One in default, for example:
INTEREST AFTER DEFAULT: If Lender declares this Note to be in default, Lender has the right prospectively to adjust and fix the simple interest rate under this Note until this Note is paid in full ... (emphasis added).
*811 Mobile One argues that the above paragraph establishes that Whitney, in order to take advantage of adjusting the interest rate on a defaulted loan, was required to declare the promissory note to be in default. Mobile One argues that until such time that Whitney declared the promissory note to be in default, Mobile One could reasonably presume that Whitney was not exercising its right to adjust the interest rate.
Mobile One argues that it was clear from the terms of the promissory note that Whitney had to formally declare default before adjusting interest rates or | (¡insisting upon payment in full. Mobile One also points out that the above section of the note, also gives the lender the right to declare formal default and insist upon payment of all other debts of any kind owed to the lender, “without further notice or demand.” Mobile One argues that Whitney previously argued that the phrase “without further notice or demand” applied to the primary obligation of Mobile One, as set forth in the promissory note, and was an express waiver of notice of default by Mobile One. Mobile One argues, however, that the argument of Whitney fails in two ways: first, the plain language still obligates Whitney to declare formal default on the second obligation, if one is owed, which Whitney argues was not the case in the instant matter; and second, “further notice” indicates that notice of default has already been given, which Mobile Once argues, was also not the case. Mobile One argues that the instant matter only concerns one debt owed to Whitney which is evidenced by the promissory note, and that Mobile One argues that the contractual terms are very clear that Whitney was required to formally declare default before exercising the remedies available.
Mobile One further argues that the terms of the promissory note indicate: (1) it never waived notice of default, expressly or impliedly; (2) an “Event of Default” can exist or occur and Whitney has no duty or obligation to exercise its rights or remedies; and (3) before Whitney could pursue any rights or remedies, the promissory note must be “put in default,” thereby giving Mobile One formal notice of default. Mobile One does not dispute that it failed to make the final payment due under the promissory note, which is considered an “event of default.” However, as argued by Mobile One, while the promissory note gives Whitney certain rights that it can exercise at its option, the list of rights is exclusive. Mobile One argues that there is no qualifying term in the agreement giving Whitney any |7more rights than those listed, and that before any remedy can be pursued by Whitney, it must make a formal declaration of default, which Whitney failed to make.
Mobile One also argues that Whitney’s withdrawal of funds in its deposit account was improper. And, assuming that Whitney would be entitled to the remedy of application of deposit account funds as set forth in La. R.S. § 6:316(0, that remedy is modified by the contractual relationship established by the parties, which has the effect of law between the parties. La. C.C. art. 1983. Thus, Mobile One argues that the clear language of the promissory note requires formal notice of default prior to Whitney taking action adverse to Mobile One. Mobile One notes that the promissory note contains a paragraph entitled “Deposit Accounts” which purports to give Whitney a continuing security interest in any funds that Mobile One had on deposit with Whitney Bank. It also states:
Borrower further agrees, to the extent permitted by law, [that] Lender may at any time apply any funds that Borrower may have on deposit with Lender or in certificates of deposit or other deposit accounts as to which Borrower is an *812 account holder against the unpaid balance of this Note and any and all other present and future indebtedness and obligations that Borrower may then owe to Lender in principal, interest, fees, costs, expenses, and reasonable attorneys’ fees.
Mobile One points out that the aforementioned section initially appears to favor Whitney. However, Mobile One suggests the phrase “to the extent permitted by law” does not specify any code articles or statutes. Mobile One maintains that the language is vague with regard to what “law” it is referring. Mobile One maintains that while Whitney may argue that the above provision .¡contained in the promissory note refers to La. R.S. § 6:316(C)[1] the plain language of the statute requires formal notice of default prior to Whitney having the right to proceed.
Mobile One also argues that while Whitney provided some correspondence related to the imminent withdrawal of funds from the ZBA checking account at Wachovia Bank, that the correspondence was sent in an effort to limit its own liability, and that the correspondence did not serve as formal notice of default. Rather, the letter provided compliance with the notice requirement of La. R.S. § 6:816(D), which served to relieve Whitney of any liability as a result of Wachovia’s dishonor of checks or drafts drawn on the account. Mobile One also argues that Whitney did not insist that Mobile One make “immediate payment in full”, and that the ZBA account is not addressed nor contemplated in any of the credit agreements or promissory notes. Mobile One maintains that the establishment and operation of its ZBA account at Wachovia Bank is separate and apart from the credit agreements.
Whitney argues that nothing written in the loan agreement required that Whitney agree to make any additional loans to Mobile One beyond the original loan evidenced by the first promissory note. Whitney also argues that the Petition of Mobile One did not allege that the indebtedness was not owed, or that Whitney |3did not actually have the remedies and rights in the collateral. Whitney argues that the Petition instead averred that Mobile One was entitled to prior notice, and that on that basis alone, Mobile One sued for breach of contract and/or for some alleged failure to extend credit and/or to make some sort of financial accommodation based on a course of conduct and/or verbal representations.
Whitney argues that under the express terms of the subject promissory note, however, Mobile One expressly waived notice. Particularly, Mobile One waived (1) demand; (2) presentment for payment; (3) protest; (4) notice of protest; (5) notice of non-payment; and (6) all pleas of division and discussion. In addition, Whitney argues that under the applicable law and jurisprudence, it did not owe any notice of default, and that the Louisiana Credit Agreement Statute (LCAS), La. R.S. § 6:1121, expressly prohibits actions by a *813 borrower against its lender based on verbal agreements to make financial accommodations, and therefore, this Court should affirm the ruling of the district court dismissing the Petition of Mobile One with prejudice.
Whitney also argues that Petition of Mobile One does not state a cause of action for breach of contract based on pursuing collateral without prior demand or notice. Whitney notes that the Petition of Mobile One alleged that a breach of contract occurred because Whitney did not have the right to pursue collateral without first giving written notice to Mobile One. Whitney argues that while Mobile One maintains that the there was a breach of contract, the actual promissory note supports the proposition that notice was waived.
In reference to the ZBA account, Whitney argues that it was entitled to apply the funds that Mobile One had on deposit towards the payment of the indebtedness of Mobile One, and to apply them without prior notice. Further, Whitney argues | mthat the LCAS prohibits claims against Whitney related to the ZBA account, and that the Petition of Mobile One has failed to state a cause of action against individual defendants named in the Petition. Lastly, Whitney maintains that it was not required to extend credit or make financial accommodations to Mobile One.
“Contracts have the effect of law for the parties and may be dissolved only through the consent of the parties or on grounds provided by law. Contracts must be performed in good faith.” La. C.C. art. 1983. Considering the aforementioned precept, we must first look to the relevant provisions of the loan agreement related to default.
F. DEFAULT: The occurrence of (i) the failure of Borrower to make payment on any Loan when due ... shall constitute a default agreement.... In the event of a Default, Whitney, at its option, shall have the right to exercise any and all of its rights and remedies under the Loan Documents.
The following paragraphs from the promissory note also address default, in pertinent part:
DEFAULT: Each of the following shall constitute an event of default (Event of Default) under this Note:
Payment Default: Borrower fails to make any payment when due under this Note.
[[Image here]]
LENDER’S RIGHTS UPON DEFAULT. Should any one or more default events occur or exist under this Note as provided above, Lender shall have the right, at Lender’s sole option, to declare formally this Note to be in default and to accelerate the maturity and insist upon immediate payment in full of the unpaid principal balance then outstanding under this Note, together with reasonable attorneys’ fees, costs, expenses, and other fees and charges as provided herein. Lender shall have the further right, again at Lender’s sole option, to declare formal default and to accelerate the maturity and to insist upon immediate payment in full of each and every other Inloan, extension or credit, debt, liability and/or obligation or every nature and kind that Borrower may then owe to Lender ... all without further notice or demand, unless Lender shall otherwise elect.
La. C.C. art. 1990, provides in part that “[w]hen a term for the performance of an obligation is either fixed, or is clearly determinable by the circumstances, the obli-gor is put in default by the mere arrival of that term.” In the instant matter, the promissory note matured on June 30, 2009, per the allonge executed May 28, 2009. *814 Given that the promissory note was due in its entirety on June 30, 2009, and further considering that Mobile One failed to either: (1) obtain another extension from the bank to extend the maturity date, or (2) pay the promissory note in full, Whitney had the express right to determine that Mobile One was in default by its failure to adhere to the terms of the promissory note. Thus, it was not unreasonable for Whitney to conclude that Mobile. One defaulted on the promissory note.
The second issue to be addressed is whether Notice was required. The plain language of the subject promissory note reads:
WAIVERS. Borrower and each guarantor of this Note hereby waive demand, presentment for payment, protest, notice of protest and notice of nonpayment, and all pleas of division and discussion, ... Borrower and each guarantor additionally agree that Lender’s acceptance of payment other than in accordance with the terms of this Note, or Lender’s subsequent agreement to extend or modify such repayment terms, or Lender failure or delay in exercising any rights or remedies granted to Lender, shall likewise not have the effect of releasing Borrower or any other party or parties from their respective obligations to Lender, or of releasing any collateral that directly or indirectly secures repayment hereof. In addition, any failure or delay on the part of Lender to exercise any of the rights and remedies granted to Lender shall not have the effect of waiving any other rights and remedies. Any partial exercise of any rights and/or remedies granted to Lender shall furthermore not be construed as a waiver of any other rights and remedies; it being Borrower’s intent and agreement that | ^Lender’s rights and remedies shall be cumulative in nature. Borrower and each guarantor further agree that, should any default event occur or exist under this Note, any waiver or forbearance on the part of Lender to pursue the rights and remedies available to Lender, shall be binding upon Lender only to the extent that Lender specifically agrees to any such waiver or forbearance in writing. A waiver or forbearance on the part of Lender as to one default event shall not be construed as a waiver or forbearance as to any other default.... [Emphasis supplied].
Considering that the promissory note does include specific language regarding waiver, we find that the executed promissory note clearly indicates that Mobile One accepted the terms contained therein. Hence, the promissory note effectively stands as prima facie proof of the rights and obligations of the parties. Mobile One has not raised any arguments that the promissory note was defective or that some act or omission by Whitney vitiated consent of the terms contained therein. The above clause clearly reads: “[bjorrower and each guarantor of this Note hereby waive demand, presentment for payment, protest, notice of protest and notice of nonpayment, and all pleas of division and, discussion.” We find that Mobile One waived its right to notice.
The third issue herein concerns whether Mobile One stated a valid cause of action against Whitney, given the terms of the promissory note.
Our review of the record indicates that the promissory note and the respective amendments were all reduced to writing and signed by the parties. The date the Note matured, as reflected in the final allonge, was June 30, 2009. However, while Mobile One repeatedly claims that verbal promises were made by Whitney executives, Mobile One repeatedly refers *815 to the subject promissory note — a written document — in support of its allegations. We, as a Court of record, may only review materials that are made a part of the record for review. There is no | ^evidence of record which purports to be a verbal promise by Whitney intending to serve to suspend the aforementioned June 30, 2009 maturity date. Thus, we can only rely on the written promissory note as the law between the parties.
The LCAS, La. R.S. § 6:1122, entitled Credit agreements to be in writing, provides:
A debtor shall not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor.
In addition, La. R.S. § 6:1122 expressly prohibits an action against a creditor based upon an oral credit agreement unless the agreement is in writing, expresses consideration, sets forth relevant terms and conditions, and is signed by the creditor and the debtor. Whitney National Bank v. Rockwell, 94-3049, p. 11 (La.10/16/95), 661 So.2d 1325, 1331. [Emphasis supplied] Furthermore, a “creditor” is defined in La. R.S. § 6:1121 as “a financial institution or any other type of creditor that extends credit or extends a financial accommodation under a credit agreement with a debtor.” The same statute defines “credit agreement” as “an agreement to lend or forbear repayment of money or goods or to otherwise extend credit, or make any other financial accommodation.”
Paragraphs XVI, XXXVII, and XXXVIII of the Petition, in particular, set forth allegations of wrongdoing and/or liability against Whitney and its executives, including, but not limited to cash flow problems due to an inability of Mobile One to obtain extended credit terms and/or an extension of the maturity date of the promissory note beyond June 30, 2009. Mobile One also alleged that its reputation was also damaged due to the ZBA account being closed by Whitney. However, we cannot say that the failure to extend credit to Mobile One, or the exercise of 114express rights conferred to Whitney by the promissory note was unreasonable or illegal under the terms of the promissory note. Thus, while the Petition in this matter alleges that Whitney and its executives, Mr. Lorio, Mr. Bush, and Mr. Jolly, were somehow liable for the hardship experienced by Mobile One, the hardship alleged could be attributed to the event of default, rather than willful and deliberate acts by Whitney or its executives.
Therefore, considering (1) the arrival of maturity of the promissory note; (2) the failure of Mobile One to pay the promissory note in full, thereby constituting an event of default; and (3) the allegations contained in the Petition in its entirety, we find that the Petition of Mobile One did not state a cause of action against any of the named defendants.

DECREE

Considering the foregoing, the judgment of the district court granting the exception of no cause of action of Whitney National Bank, Gary Lorio, Harlan Bush, and Bill Jolly, is affirmed.
AFFIRMED
BONIN, J., concurs with additional reasons.

. La. R.S. § 6:316(C) provides:
In the event that the depositor should default under any loan, extension of credit or other direct or indirect obligation of any nature and kind whatsoever in favor of the depository bank, the bank shall have the right to apply any and all funds that the depositor then has on deposit with the bank or on which the bank has taken a security interest under Chapter 9 of the Louisiana Commercial Laws (R.S. § 10:9-101, etseq.) towards the payment of the depositor's indebtedness or obligations, whether such payment satisfies the indebtedness or obligations in whole or in part. The exercise of the bank's remedies under this Subsection shall not affect any other rights and remedies available to the bank following the depositor’s default.