# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 23-550 consolidated with 24-53


**STATE OF LOUISIANA AND THE
VERMILION PARISH SCHOOL BOARD**

**VERSUS**

**LOUISIANA LAND & EXPLORATION
COMPANY, ET AL.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 82,162
HONORABLE ROYALE L COLBERT, JR., DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## GARY J. ORTEGO
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of D. Kent Savoie*[1], Gary J. Ortego, and Ledricka J. Thierry, Judges.


**AFFIRMED.**


Savoie, J- Concurs, with written reason.

---

[1]*Honorable D. Kent Savoie participated in this decision by appointment of the Louisiana Supreme Court as Judge Ad Hoc.

**Jerold Edward Knoll**
**The Knoll Law Firm**
**P. O. Box 426**
**Marksville, LA 71351**
**(318) 253-6200**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
     **The Vermilion Parish School Board**

**Donald T. Carmouche**
**Victor L. Marcello**
**Diane Adele Owen**
**John Hogarth Carmouche**
**William R. Coenen, III**
**Brian T. Carmouche**
**Christopher D. Martin**
**Ross J. Donnes**
**Todd J. Wimberley**
**Caroline H. Martin**
**Leah C. Poole**
**Talbot, Carmouche & Marcello**
**17405 Perkins Road**
**Baton Rouge, LA 70810**
**(225) 400-9991**
**COUNSEL FOR PLAINTIFF/APPLLEE:**
     **The Vermilion Parish School Board**

**Jeffrey J. Gelpi**
**Michael R. Phillips**
**Anne C. Lemelin**
**Kean, Miller, LLP**
**909 Poydras St., #3600**
**New Orleans, LA 70112**
**(504) 585-3050**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Union Oil Company of California**

**Louis Victor Gregoire, Jr.**
**Kean, Miller, LLP**
**400 Convention Street, #700**
**Baton Rouge, LA 70802**
**(225) 387-0999**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Union Oil Company of California**

**Grady Joseph Abraham**
**Attorney at Law**
**5040 Ambassador Caffery #200**
**Lafayette, LA 70508**
**(337) 234-4523**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
**The Vermilion Parish School Board**

**Andrew M. Stakelum**
**King & Spalding**
**1100 Louisiana, Ste 4000**
**Houston, TX 77002**
**(713) 751-3200**
**COUNSEL FOR DEFENDANT/APPELLANT:**
**Union Oil Company of California**

**Michael L. Heaton**
**Talbot, Carmouche & Marcello**
**17405 Perkins Road**
**Baton Rouge, LA 70810**
**(225) 400-9991**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
**The Vermilion Parish School Board**

**Dylan T. Scully**
**Kean, Miller, LLP**
**400 Convention Str. Ste. 700**
**Baton Rouge, LA 70821**
**(225) 387-0999**
**COUNSEL FOR DEFENDANT/APPELLANT:**
**Union Oil Company of California**

**Claire E. Juneau**
**Robert E. Meadows**
**King & Spalding, LLP**
**1100 Louisiana, Ste 4000**
**Houston, TX 77002-5213**
**(713) 751-3200**
**COUNSEL FOR DEFENDANT/APPELLANT:**
**Union Oil Company of California**

**ORTEGO, Judge.**

The Vermilion Parish School Board brought action to have oil company deposit additional funds per a final Most Feasible Plan under Act 312 to remediate oil-field waste and contamination on 1,200 acres of mostly submerged wetlands owned by the state and managed by the school board. The trial court ordered the oil company to deposit funds to, *inter alia*, remediate groundwater, reenter a certain saltwater disposal well, and remediate soil. The oil company appeals. We affirm.

<u>**FACTS AND PROCEDURAL HISTORY**</u>

This case involves legacy litigation under Act 312 of 2006. In *Marin v. Exxon Mobil Corp.*, 09-2368, 09-2371, p. 1 (La. 10/19/10), 48 So.3d 234, 238, n.1, the Louisiana Supreme Court explained:

> "Legacy litigation" refers to hundreds of cases filed by landowners seeking damages from oil and gas exploration companies for alleged environmental damage in the wake of this Court's decision in *Corbello v. Iowa Production*, 02-826 (La. 2/25/03), 850 So.2d 686. These types of actions are known as "legacy litigation" because they often arise from operations conducted many decades ago, leaving an unwanted "legacy" in the form of actual or alleged contamination. Loulan Pitre, Jr., "Legacy Litigation" and Act 312 of 2006, 20 Tul. Envt. L.J. 347, 34 (Summer 2007).

In 2004, the State of Louisiana and the Vermilion Parish School Board (collectively "VPSB") filed suit against Union Oil Company of California, Union Exploration Partners (collectively, "Unocal"), Chevron U.S.A., Inc., Chevron Midcontinent LP, and Carrollton Resources, LLC as Defendants. Pursuant to a 1935 mineral lease and a 1994 surface lease, Unocal conducted oil exploration and oilfield production on the VPSB land for several decades.

Under the 2006 version of La.R.S. 30:29, often referred to as Act 312, VPSB sought remediation of certain lands known as Section Sixteen lands, the sections numbered 16 in each township of Louisiana set aside for the purpose of supporting public schools. The legislature's intent in passing Act 312 was to ensure that funds

awarded for remediation of contaminated property would indeed be spent to remediate the property and bring the land up to current environmental standards. See La.R.S. 30:29(A), (G) (2006); See also, *State v. La. Land and Expl. Co.*, 12-0884, (La. 1/30/13), 110 So. 3d 1038.

During discovery, and pursuant to provision (C) of La.R.S. 30:29 (2006), Unocal entered a limited admission pursuant to the La.Code of Civ.P. art. 1563, wherein it admitted responsibility for environmental damage, as defined by Act 312. This was ostensibly done for the sole purpose of ensuring that evaluation and remediation of the property could begin efficiently and promptly after trial, once a Most Feasible Plan (MFP) for doing so was proposed by each litigant and a public hearing was held before the Louisiana Department of Natural Resources ("LDNR"), who then submitted its recommendation regarding a MFP to the trial court. Unocal's admission was not an admission of any of VPSB's private causes of action.

Trial was held in May of 2015. At the conclusion of the fourteen-day trial, the jury returned a verdict finding Unocal had contaminated the land and awarding VPSB $3,500,000.00 for remediation of the land in compliance with applicable state standards and regulations pursuant to Act 312. Additionally, the jury awarded $1,500,000.00 in damages for VPSB's private strict liability action. The jury denied all other VPSB causes of action. VPSB filed a motion for new trial, alleging that the jury verdict was inconsistent because the jury awarded damages for remediation and strict liability but awarded no damages for its contract actions. The trial court denied the motion.

This court in *State v. La. Land & Expl. Co.*, 17-830, p. 5 (La.App. 3 Cir. 3/14/18), 241 So.3d 1258, 1264, *writ denied*, 18-476 (La. 9/28/18), 252 So.3d 924, noted the procedure following a trial as follows:

[A] defendant who has admittedly caused, or has been found to have caused, environmental damage to property must submit a plan for remediation of the damage to the LDNR. La.R.S. 30:29(C)(1). The plaintiff may also submit a plan for the LDNR's consideration. La.R.S. 30:29(C)(1). The LDNR then conducts a public evidentiary hearing. La.R.S. 30:29(C)(2)(a).

After the hearing, the LDNR considers any plans properly submitted and ultimately issues its own plan, which may or may not approve and adopt all or part of either submitted plan. The LDNR plan must be the plan it finds to be the "most feasible plan" within the meaning of La.R.S. 30:29(C)(2)(a).

Prior to the above, the court stated the following:

Thereafter, the [LDNR] holds a public hearing on the submissions. La. R.S. 30:29(C)(2). Within a time set by the statute, the [LDNR] determines, based on evidence submitted, the most feasible plan to accomplish the evaluation/remediation of the environmental damage while protecting the health, safety and welfare of the public. *Id.* By mandating that "applicable standards" shall be used and applied in approving or structuring the most feasible plan to evaluate or remediate the environmental damage, the legislature has not limited the [LDNR] to any one standard in its development of the most feasible plan. La. R.S. 30:29(C)(3). The plan approved by the [LDNR] is not to be considered an adjudication subject to appellate review. La. R.S. 30:29(C)(4).

Instead, the plan approved by the [LDNR] is sent to the court for its review. The plaintiff or any other party may submit its own plan, comment or input in response, within a certain time frame. La. R.S. 30:29(C)(1). Unless a party proves by a preponderance of evidence that another plan is a more feasible plan, the court shall adopt the plan approved by the [LDNR]. If the court enters a judgment adopting a plan other than the one approved by the [LDNR], the court shall assign written reasons. Once a plan is determined, the court shall order the party or parties admitting responsibility or found legally responsible by the court to fund the implementation of the plan. In making this determination, the court will decide how much of the damages are to be used for remediation of the property. La. R.S. 30:29(C)(5).

The court's judgment adopting a plan of evaluation or remediation and ordering the legally responsible parties to deposit funds into the court's registry shall be considered a final judgment for appeal purposes. La. R.S. 30:29(C)(6)(a).

*Id.* at 1263.

According to the procedure outlined above, the matter was then referred to the LDNR for a public hearing. In accordance with the trial court's order, VPSB and Unocal submitted plans for evaluation and remediation of the land to the LDNR. Rather than adopting either submission, the LDNR structured its own MFP, which the trial court accepted.

VPSB and Unocal each appealed the judgment of the trial court alleging various errors not relevant to this appeal apart from the propriety of the trial court's adoption of LDNR's MFP.

According to this court, when discussing facts and procedural history regarding the MFP:

> The plan addressed six separate areas of soil and sediment contamination and seven areas of groundwater contamination. In areas where data was sufficient, the plan recommended how and to what degree each section was to be remediated. In areas where the data was insufficient, the plan required additional testing and evaluation. It also estimated the cost of implementing the plan as written at one million four hundred eleven thousand, one hundred and ninety dollars ($1,411,190.00). Its estimate did not include costs of remediation once the required additional evaluations were performed and sufficient data was received. The plan ordered [Unocal] to fund and perform the remediation work as set forth in the plan.
>
> VPSB did not directly challenge the LDNR plan or request an additional preponderance hearing under La.R.S. 30:29(C)(5). Instead, VPSB sent twenty-seven written questions to LDNR after the plan was released that sought interpretation and clarification of the plan. The LDNR panel answered these questions in writing and specifically conditioned their use as a clarification tool only. LDNR made clear that "[w]hile these answers do not alter the MFP [] in any way, we are hopeful they will provide the requested and desired clarity to the MFP." []
>
> The parties then filed competing motions to adopt their respective proposed judgments as the court's most feasible plan. Both proposed judgments adopted the LDNR plan as the judgment of the court. However, the parties disputed specific language in the proposed judgments, and their motions to adopt were set for hearing. At the "judgment hearing," the pertinent issues presented to the trial court for its consideration were: (1) whether and/or how to incorporate the written questions and answers between VPSB and LDNR into the judgment and; (2) which party should perform the remediation and

4

evaluations recommended in the plan. Counsel for both parties participated in the hearing and were given more than ample opportunity to argue their respective positions to the trial court. During the hearing, the trial judge made clear that the questions and answers provided by LDNR to Plaintiffs, at their request, "should be part of the record, but they do not alter the plan as indicated by LDNR. They do not alter the plan in any way." []

Ultimately, the trial court rendered judgment on November 3, 2016, adopting the LDNR plan as written and attached the written questions and answers as Exhibit B to the judgment and made them part of the record. The judgment further obligated [Unocal] to fund and perform the remedial work and evaluations set forth in the plan. VPSB filed a timely appeal.

Thereafter, this court affirmed the trial court's adoption of the MFP. The supreme court denied writs on that appeal. Thus, the 2016 judgment containing this MFP became a final judgment. *Id.*

The MFP, in a section regarding the cost estimates to be implemented, states as follows (emphasis added):

The cost estimate to implement the Plan *as presently known* is $1,411,190 (rounded). . . . This estimate does *not* include additional well installations *that may be necessary* pursuant to this Plan; any additional evaluation costs *that may be necessary* from additional sampling and/or further delineation required by this Plan (beyond what is specifically covered in cost tables above); and/or any remediation costs *that may be necessary* based on results of sampling and/or further delineation. *Additional costs will depend on what sampling and/or delineation reveals.*

On January 17, 2023, VPSB filed a motion to require Unocal to deposit additional money in the registry of the court based on the assertion that the initial deposit was insufficient to complete the evaluation of remediation of the lands mandated by the MFP. After a three-day hearing on the matter, the trial court issued a judgment signed on July 27, 2023. The judgment ordered, relevant to this appeal, Unocal to deposit an additional $63,232,983 into the registry of the court to be used towards specific costs of evaluating and remediating certain areas of the lands and

ordered VPSB and Unocal to work with the LDNR to develop a plan to remove certain substances from canal sediment and groundwater remediation.

Unocal sought to appeal this judgment, and an order of appeal was entered on August 24, 2023. Prior to the appeal being lodged in this court, VPSB filed a motion to dismiss the unlodged appeal. This motion was denied via an unpublished opinion. See *State v. La. Land & Expl. Co.*, 23-591, p. 4 (La.App. 3 Cir. 11/15/23), 2023 WL 7754114, *writ denied*, 23-1619 (La. 2/6/24), 378 So.3d 754.

Unocal also filed an application for supervisory writs, assigned docket number 23-550, solely as a precaution to reserve all rights to seek review of the judgment in the event this court finds that any aspect of the judgment is not immediately appealable. Unocal's appeal was eventually lodged and docketed as number 24-53. Unocal's writ application and appeal were consolidated to constitute the matter now before us.

## ASSIGNMENTS OF ERROR

1.  The trial court erred by making material changes to the 2016 judgment adopting the Most Feasible Plan, which is a final, definitive judgment.

2.  The trial court exceeded its authority under Act 312 by adopting a new plan for evaluation and remediation not required by the Most Feasible Plan.

3.  The trial court usurped the decision-making power granted to LDNR by the legislature and the Most Feasible Plan.

## STANDARD OF REVIEW

We review La.R.S. 30:29 cases under the de novo standard of review. La.R.S. 30:29(C)(6)(b). In performing a de novo review, "the appellate court must review the record in its entirety, giving no special weight to the trial court's determinations." *Kyle v. Kier*, 17-134, (La.App. 3 Cir. 11/15/17), 233 So.3d 708, 715. "[U]nder the de novo standard of review, the appellate court . . . review[s] the record in its entirety to determine whether the trial court's decision was legally correct in light of the evidence." *Domingue v. Bodin*, 08-62, p. 2 (La.App. 3 Cir. 11/5/08), 996 So.2d 654, 656 (citations omitted). In our review, we may either "affirm the trial court's adoption of a plan or

6

may adopt a feasible plan in conformity with this Section and shall issue written reasons for [our] decision." La.R.S. 30:29(C)(6)(c).

*La. Land & Expl. Co.*, 241 So.3d at 1265 (alterations and parenthetical in original).

Here, there is no dispute that the MFP was final in this matter between the parties. However, Unocal asserts that the trial court's judgment materially altered or created a new MFP, while VPSB asserts that the trial court's judgment simply was an exercise of the trial court in performing its gatekeeping function to further enforce the MFP. We note that Unocal assigns no error and presents no argument to this court that the amount the trial court ordered it to deposit was excessive for the specific performance it ordered of Unocal. Further, Unocal does not question the evidentiary basis for the trial court's judgment. Rather, Unocal's assignments of error and arguments are focused solely on the legal basis of the trial court's judgment. These assignments and arguments made by Unocal involve an error of law. Questions of law are reviewed de novo, with no deference to legal conclusions of the courts below. *Snider v. La. Med. Mut. Ins. Co.*, 13-579 (La. 12/10/13), 130 So.3d 922.

## DISCUSSION OF THE MERITS

*Ancillary Matter: Previous Ruling denying VPSB's Motion to Dismiss Appeal*

In brief and oral arguments, Unocal cites this court's prior, unpublished ruling in *La. Land & Expl. Co.* It argues that language from that ruling is persuasive in connection with the merits of the appeal now before us. In denying VPSB's motion to dismiss this current appeal, this court stated:

> We find that the July 27, 2023 judgment is a final appealable judgment under La.R.S. 3029(C)(6) as it adopts a new plan for additional evaluation and remediation not required by the MFP and orders Unocal to deposit $63,232,983 for the implementation of that new plan. Further, the judgment makes material changes to the 2016 judgment adopting the MFP. Accordingly, we deny VPSB's motion to dismiss the appeal.

*Id.*

7

"The appellate court shall render any judgment which is just, legal, and proper *upon the record* on appeal." La.Code Civ.P.art. 2164 (emphasis added).

While we acknowledge this court's language cited above, however, that matter involved a narrow issue of whether the trial court's judgment was appealable under La.R.S. 30:26(C)(6), and the motion was filed prior to this appeal record being lodged. Thus, that previous ruling involved the narrow issue of whether VPSB's motion to dismiss Unocal's appeal had merit, and the merits of the appeal now before us, i.e., the propriety of the trial court's judgment with respect to the MFP, were not before the court at that time.

"The law favors appeals. Thus, they are to be maintained unless a legal ground for dismissal is clearly shown." *Davidge v. Magliola*, 346 So.2d 177, 179 (La. 1977) (citing *Howard v. Hardware Mut. Co.*, 286 So.2d 334, 336 (La. 1973); *La. Power & Light Co. v. Lasseigne*, 255 La. 579, 588, 232 So.2d 278, 282 (1970); *Favrot v. Favrot*, 252 La. 192, 197, 210 So.2d 316, 317 (1968)). The burden of proof on a motion to dismiss rests with the mover. See *Dhaliwal v. Dhaliwal*, 52,507 (La. App. 2 Cir. 2/27/19), 265 So.3d 1188, 1194. In addressing whether a legal ground for dismissal is clearly shown, "[t]his Court is a court of record and can only review what is contained in the record on review." *NOLA 180 v. Harrah's Operating Co.*, 12-72, p. 3 (La.App. 4 Cir. 5/16/12), 94 So.3d 886, 888 (citing *Mobile-One Auto Sound, Inc. v. Whitney Nat'l Bank*, 11-535 (La.App. 4 Cir. 11/9/11), 78 So.3d 807).

As such, the ruling denying VPSB's motion to dismiss Unocal's appeal was correct, as, at the time of rendering its ruling, the appeal record was not yet lodged. Clearly, with no record yet lodged with the appellate court, VPSB could not carry its burden to prove that Unocal's appeal should be dismissed.

With respect to the language cited above detailing the reasoning for denying VPSB's motion, neither the judgment nor the MFP were in a record before that court,

8

as there was no record before the court at that time. Thus, there was no basis from which to properly analyze what the judgment now before us did with respect to the MFP. To find the language persuasive, as Unocal suggests, would be to ignore the well-established tenet of an appellate court under La.Code Civ.P.art. 2164 to render judgments on the record. Accordingly, we find no merit to Unocal's assertion that the language cited above is persuasive to this court in adjudicating this appeal.

*Ancillary Matter: Dismissal of Unocal's Appeal*

VPSB argues that the judgment before us is neither appealable under Act 312 nor final under the Louisiana Code of Civil Procedure. We have already ruled on this issue in the unpublished opinion cited above, *State v. La. Land & Expl. Co.*, 23-591(La.App. 3 Cir. 11/15/23) [, 2023 WL 7754114], *writ denied*, 23-1619 (La. 2/6/24), 378 So.3d 754.

Moreover, La.R.S. 30:29(C)(6)(a) states:

> Any judgment adopting a plan of evaluation or remediation pursuant to this Section and ordering the party or parties admitting responsibility or the party or parties found legally responsible by the court to deposit funds for the implementation thereof into the registry of the court pursuant to this Section shall be considered a final judgment pursuant to the Code of Civil Procedure Article 2081 et seq., for purposes of appeal.

Here, the trial court's judgment, *inter alia*, ordered Unocal to deposit additional funds in the court registry, ordered Unocal and VPSB, along with the LDNR, to develop a plan for actual removal of certain canal sediments, and ordered Unocal to perform groundwater remediation. Thus, per La.R.S. 30:29(C)(6)(a) cited above, it is a final judgment for purposes of appeal. Accordingly, VPSB's argument lacks merit.

## ASSIGNMENTS OF ERROR NUMBERS ONE AND TWO

In its first assignment of error, Unocal contends that the trial court erred by making material changes to the 2016 judgment adopting the MFP, a final, definitive judgment.  Similarly, Unocal asserts, in its second assignment of error, that the trial court exceeded its authority under Act 312 by adopting a new plan for evaluation and remediation not required by the MFP.  Both of these assignments contend the trial court exceeded its authority relative to the MFP and concern the same standard of review and arguments.  Accordingly, we will address them under one heading.

Unocal argues that the trial court cannot materially change or adopt a new MFP per res judicata.

> Res judicata bars relitigation of a subject matter arising from the same transaction or occurrence of a previous suit. LSA-R.S. 13:4231. It promotes judicial efficiency and final resolution of disputes. *Terrebonne Fuel & Lube v. Placid Refining*, 95-0654, 95-0671, pp. 11-12 (La.1/16/96); 666 So.2d 624, 631. A judgment determining the merits of a case is a final judgment. La.C.C.P. art. 1841. See also, *Tolis v. Board of Sup'rs of Louisiana State University*, 95-1529 (La.10/16/95); 660 So.2d 1206. A valid and final judgment is conclusive between the same parties, except on appeal or other direct review. LSA-R.S. 13:4231. If a certiorari application is filed, the court of appeal judgment becomes final and definitive when the supreme court denies the application for certiorari. La.C.C.P. art. 2166D.
>
> A final judgment from which there can be no appeal acquires the authority of the thing adjudged. La.C.C. art. 3506(31). Once a final judgment acquires the authority of the thing adjudged, no court has jurisdiction to change the judgment, regardless of the magnitude of the final judgment's error. *Tolis* at 3; 660 So.2d at 1206-1207.

*Avenue Plaza, L.L.C. v. Falgoust*, 96-173, pp. 4-5 (La. 7/2/96), 676 So.2d 1077, 1079.

We find that Unocal is correct that materially changing or adopting a new MFP would exceed the trial court's authority in this matter.

Here, there is no dispute that the MFP was final.  See *State v. La. Land & Expl. Co.*, 17-830 (La.App. 3 Cir. 3/14/18), 241 So.3d 1258, *writ denied*, 18-476 (La.

10

9/28/18), 252 So.3d 924.  Therefore, in this matter, per res judicata, the trial court cannot materially change the MFP, nor can it create a new MFP.

Therefore, our review in this appeal involves whether the trial court's 2023 judgment actually did materially change the MFP or create a new MFP.  Here, Unocal has acknowledged that the trial court does have authority to enforce the judgment as written, including the MFP.

The issue regarding what constitutes a material change to an existing MFP or an adoption of a new MFP under Act 312 is res nova to this litigation.  However, as with any final judgment, the trial court is limited as to what it can change.

> A final judgment may be amended by the trial court at any time, with or without notice, on its own motion or on motion of any party to alter the phraseology of the judgment, but not the substance, or to correct errors of calculation. LSA-C.C.P. art. 1951.
>
> In other words, a judgment may be amended by the court where the resulting judgment takes nothing from or adds nothing to the original judgment. *Villaume v. Villaume*, 363 So.2d 448, 450 (La.1978). However, an amendment to a judgment which adds to, subtracts from, or in any way affects the substance of the judgment, is considered a substantive amendment. *Starnes v. Asplundh Tree Expert Company*, 94-1647 (La.App. 1st Cir. 10/6/95), 670 So.2d 1242, 1246. Substantive amendments to judgments can be made only after a party has successfully litigated a timely application for new trial, an action for nullity, or a timely appeal. *Creel v. Bogalusa Community Medical Center*, 580 So.2d 551, 552 (La.App. 1st Cir.), *writ denied*, 585 So.2d 567 (La.1991).

*Suprun v. Louisiana Farm Bureau Mutual Insurance Co.*, 09-1555, p. 10 (La.App. 1 Cir. 4/30/10), 40 So.3d 261, 268.

Given the above, we will look to the MFP's language regarding the three areas addressed by Unocal's arguments:  groundwater remediation, reentry in SWD #16, and soil remediation.  Thereafter, we will look at what the trial court's judgment ordered regarding those three areas and determine whether the MFP's language allows for the trial court to order Unocal to perform remediation specifically towards those three areas.

11

In looking toward what the language the MFP in this matter required of Unocal, we note the following from *State v. La. Land & Expl. Co*., 19-248, p. 42 (La.App. 3 Cir. 5/6/20), 298 So.3d 296, 325:

In *State v. La. Land & Explor. Co*., 17-830 (La.App. 3 Cir. 3/14/18), 241 So.3d 1258, *writ denied*, 18-476 (La. 9/28/18), 252 So.3d 924, an earlier appeal, this court dealt with the issue of whether LDNR's plan was appropriately adopted by the trial court. Chief Judge Thibodeaux, dissenting, stated the following:

> [T]he final plan submitted to the trial court contains far too many contingencies with no estimate of the cost of the contingencies. In short, the LDNR plan was incomplete; it repeatedly described more work that had to be done before remediation would be complete, including at least two years of monitoring, but the trial court did not require cost estimates on the additional work. As a result, no one knows, or even has a good estimate of, how much it will take to remediate the land to the level required to protect the public; and no one knows how long it will take to finish the remediation.

*Id*., at 1269.

In a rather prophetic dissent by Chief Judge Thibodeaux in that case, when addressing the MFP, he went on to point out numerous issues with LDNR's adopted plan relative to its incompleteness or uncertainty, stating, "the trial court's judgment[] is a final judgment that will propagate needless litigation in the future."

The dissent went on to assert the following:

the final plan submitted to the trial court contains far too many contingencies with no estimate of the cost of the contingencies. In short, the LDNR plan was incomplete. . . . As a result, no one knows, or even has a good estimate of, how much it will take to remediate the land to the level required to protect the public; and no one knows how long it will take to finish the remediation.

*Id*. at 1269.

This language was quite prophetic as this appeal is now adjudicating the propriety of the trial court's decisions regarding how to remedy and fund some of those "far too many contingencies" in the MFP.

12

As the 2016 judgment containing the MFP is a final judgment, Unocal is subject to the trial court's implementations to further the goal of the procedures of Act 312, i.e., to remediate damage to the environment "to a standard that protects the public interest," as long as those implementations by the trial court were contemplated and stated possibilities in the language of the MFP.

The MFP, in the section regarding cost estimates to be implemented, states as follows (emphasis added):

> The cost estimate to implement the Plan *as presently known* is $1,411,190 (rounded). . . . This estimate does *not* include additional well installations *that may be necessary* pursuant to this Plan; any additional evaluation costs *that may be necessary* from additional sampling and/or further delineation required by this Plan (beyond what is specifically covered in cost tables above); and/or any remediation costs *that may be necessary* based on results of sampling and/or further delineation. *Additional costs will depend on what sampling and/or delineation reveals.*

Despite Chief Judge Thibodeaux's dissent, this broad language of the MFP was deemed necessary by this court in *La. Land & Expl. Co.*, 241 So.3d 1258, as, at the time, Unocal admitted to damaging the lands, the extent of the damage and costs associated with evaluating, delineating, remediating those damages were yet unknown.

### 1.Groundwater Remediation

Unocal first contends the trial court erred when ordering groundwater remediation when the MFP only called for groundwater evaluation. Unocal is correct that the MFP called for it to evaluate groundwater, wherein it states the plan for groundwater "is an evaluation plan because the data as to the [constituents of concern (COC)] discussed below is considered incomplete." The MFP went on to state that resampling was required for confirmation of the existence of some COCs and required complete delineation and characterizations of the COCs.

Unocal's argument is that because the MFP required evaluation of the groundwater, the trial court could not order remediation of the groundwater. We find this argument is without merit. If Unocal's argument had merit, then Act 312 would be interpreted to completely ignore the findings of an MFP ordered evaluation. Clearly, an order of remediation stemming from an MFP ordered evaluation furthers the goal of the procedures of Act 312, i.e., to remediate damage to the environment "to a standard that protects the public interest," and is proper.

Moreover, the MFP in this case specifically states the possibility for the trial court to require "additional remediations based on results of then currently ordered evaluations." As such, given the open-ended broad language of the MFP applicable to evaluations leading to ordered remediations, we find that the trial court's judgment did not materially change the MFP regarding groundwater, nor did it adopt a new MFP. Thus, we find remediation of groundwater, along with the evaluation and monitoring of groundwater, is a contemplated and stated contingency in the MFP.

*2. Reentry of Saltwater Disposal Well, SWD #16*

Second, Unocal contends that the trial court erred by ordering it to reenter one of its saltwater disposal wells, SWD #16, when the LDNR simply noted in the MFP that SWD #16 should be investigated. The MFP states, regarding SWD #16 (footnotes omitted), the following (emphasis added):

> The Plan is requiring that the elevated benzene and aromatics at this location be verified. *If verified*, then the Plan is requiring further delineation. The Plan accepts the [Unocal] Plan proposed placement of wells for delineation purposes. But, further wells *may be necessary* to complete delineation. When benzene (and other COCs) at BC-2 have been adequately characterized and delineated, to the extent the source(s) can be determined, [Unocal] must provide a plan to remediate the benzene (and other COCs) to the applicable RECAP standards, or demonstrate the LDNR's satisfaction that the COCs do not pose a risk in accordance with the appropriate RECAP procedure.

14

Additionally, the MFP, at note 155, specifically addressed SWD #16 and states (emphasis added), "the SWD(s) *should be investigated* as a possible source of the benzene" because the location of benzene at that depth of the soil "may suggest the possibility of a leaking SWD."

Here, the trial court ordered Unocal to reenter SWD #16 to investigate it as a potential source of benzene. We find the contingency of reentry into SWD #16 was a contemplated and stated possibility in the MFP and in note 155. Therefore, as above, we find that the trial court's judgment did not materially change the MFP, nor did it adopt a new MFP.

*3. Soil Remediation*

Finally, Unocal contends that the MFP did not require soil remediation at Tank Battery A – South Pit (Pipeline) Area, but instead required evaluation and delineation of soil in that area. The language in the MFP addressing this issue states, "[t]he Plan is requiring further evaluation and delineation of soil in this area . . . to ensure that this area is adequately characterized, and to determine if the current soil conditions are protective of soil to groundwater and soil to surface water pathways."

Unocal's argument, like its argument regarding groundwater remediation, is that the trial court's judgment ordering remediation of the soil in that area materially changed the MFP or adopted a new MFP when the MFP only called for evaluation and delineation. As before, we find this argument is misplaced. Unocal's obligations are not limited to finding and monitoring environmental damages but also include taking steps to remedy those damages discovered based on the goal of Act 312, along with the MFP's language stating "additional ***remediations*** based on results of then currently ordered evaluations" were possible. Accordingly, we find that the trial court can order soil remediation at Tank Battery A – South Pit (Pipeline) Area, as doing so is a contemplated and a stated contingency of this MFP.

## ASSIGNMENT OF ERROR NUMBER THREE

In its final assignment of error, Unocal argues that the trial court usurped the decision-making power granted to the LDNR by the legislature by ordering evaluation and remediation without any input or decision from the LDNR. Unocal argues that once the evaluation required by the MFP is done, the trial court's authority under Act 312 ends. We find this argument without merit.

> "[T]he final decision as to the remediation plan adopted rests with the court." *Louisiana Land*, 110 So.3d at 1049.2 The DNR plan itself is not a final decision, but basically evidence to be considered by the trial court in ultimately determining the most feasible plan. The trial court is the final arbiter in determining the most feasible plan for remediation to state standards as well as the gatekeeper for overseeing its implementation. See La.R.S. 30:29(C)(5).

*Savoie v. Richard*, 13-1370, pp. 9-10 (La.App. 3 Cir. 4/2/14), 137 So.3d 78, 87, *writ denied*, 14-1283, 14-1287 (La. 11/14/14), 152 So.3d 880.

It is clear that should the mandated evaluations in the MFP discover the requirement of remediation, the trial court is the "gatekeeper" in overseeing implementation of the remediation. Thus, Unocal's argument that the trial court's authority under Act 312 ends when evaluation is done is without merit.

Regarding Unocal's argument that the trial court's judgment usurped the decision-making power granted to the LDNR by the legislature by ordering evaluation and remediation without any input or decision from the LDNR, here, the LDNR is a party to this continuing legacy litigation and remains a party to the MFP.

Additionally, the LDNR was subpoenaed and initially appeared at the hearings on this matter. However, prior to any evidence being presented, LDNR requested to be released from VPSB's subpoena demanding its presence. The record reflects that at the hearing, the LDNR, through its employee/representative, Jamie Love, and their attorney Jonathan Rice, announced to the trial court that LDNR's

16

presence and testimony was unnecessary for the hearing, stating the following (emphasis added):

> [LDNR has] the position that we don't have a -- *we don't have anything to add here*. [The trial court is] going to hear everything that you need to hear from their experts. . . . the revised statute 30:29 (d) and (f) states specifically that **this Court retains oversight to ensure compliance with the [MFP] and retains continuing jurisdiction until such time as evaluation or *remediation* are completed**.
>
> We can't offer any comments right now to say one way or the other. That's what I'm here to say, and I appreciate the fact that we would be released from this subpoena for being here and appreciate the Court's allowing us to be released.

The trial court expressed a concern and desire to have LDNR's input and to have a representative present because Unocal's reports regarding its actions towards their continuing monitoring and compliance with the MFP were sent directly to LDNR and, according to the trial court, were not contained in the electronic/digital record presented to the trial court. LDNR then informed the court that in fact all of those reports were in the physical record. When further questioned by the trial court as to the LDNR and Unocal's reports, Mr. Rice reiterated, "Ms. Love is not prepared to offer anything that the reports that Chevron [] sent to the Judge already or what these experts are ready to testify to, nothing further that they would not be able to provide."

Pursuant thereto, and prior to releasing the LDNR, the trial court ordered that all LDNR reports be on its desk so the trial court would have them available in formulating its judgment. VPSB's counsel then assured the trial court that those reports were present in the courtroom and would be introduced into evidence. Thereafter, the trial court granted LDNR's request. Thus, we find that all reports, information, and input necessary from LDNR was provided to the trial court for these hearings.

Unocal's argument in this assignment of error is predicated on a finding that the trial court materially changed or created a new MFP. However, we found previously in assignments of error numbers one and two that the trial court did neither. As such, given that the LDNR voluntarily requested and was released from the hearing, we find that the trial court did receive the proper input necessary from LDNR. Thus, we find that the trial court was merely exercising, in its rulings, its mandated continuing oversight function under Act 312 by ordering additional funding to be deposited by Unocal as to these previously unknown and now proven contingencies and remediation as provided in the MFP. Thus, we find no merit to this assignment of error.

## CONCLUSION

In summary, after a de novo review of the entire record of this extensive and continuing legacy litigation, we find that the trial court's rulings and decisions contained in the judgment of July 27, 2023, directly involves its continuing oversight to ensure compliance with the MFP under La.R.S. 30:29(d) and La.R.S. 30:29(f). This continuing jurisdiction as gatekeeper will "ensure compliance with the MFP," accomplishing the purpose of Act 312 and "continuing [the trial court's] jurisdiction until such time as evaluation or remediation are completed." Thus, we find the trial court did not materially change or alter the MFP, nor create a "new" MRP.

## DECREE

Appellant, Union Oil Company of California, raises three assignments of error. We find no merit to any assignment raised. As such, we affirm the trial court's 2023 judgment in its entirety. The costs of these proceedings, including this appeal, are assessed to Union Oil Company of California.

**AFFIRMED.**

18

# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 24-53 consolidated with 23-550

**STATE OF LOUISIANA AND THE
VERMILION PARISH SCHOOL BOARD**

**VERSUS**

**LOUISIANA LAND & EXPLORATION
COMPANY, ET AL.**

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 82,162
HONORABLE ROYALE L COLBERT, JR., DISTRICT JUDGE

**********

## GARY J. ORTEGO
## JUDGE

**********

Court composed of D. Kent Savoie*[1], Gary J. Ortego, and Ledricka J. Thierry, Judges.

**AFFIRMED.**

Savoie, J- Concurs, with written reasons.

---

[1]*Honorable D. Kent Savoie participated in this decision by appointment of the Louisiana Supreme Court as Judge Ad Hoc.

**Jerold Edward Knoll**
**The Knoll Law Firm**
**P. O. Box 426**
**Marksville, LA 71351**
**(318) 253-6200**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **The Vermilion Parish School Board**

**Donald T. Carmouche**
**Victor L. Marcello**
**Diane Adele Owen**
**John Hogarth Carmouche**
**William R. Coenen, III**
**Brian T. Carmouche**
**Christopher D. Martin**
**Ross J. Donnes**
**Todd J. Wimberley**
**Caroline H. Martin**
**Leah C. Poole**
**Talbot, Carmouche & Marcello**
**17405 Perkins Road**
**Baton Rouge, LA 70810**
**(225) 400-9991**
**COUNSEL FOR PLAINTIFF/APPLLEE:**
    **The Vermilion Parish School Board**

**Jeffrey J. Gelpi**
**Michael R. Phillips**
**Anne C. Lemelin**
**Kean, Miller, LLP**
**909 Poydras St., #3600**
**New Orleans, LA 70112**
**(504) 585-3050**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Union Oil Company of California**

**Louis Victor Gregoire, Jr.**
**Kean, Miller, LLP**
**400 Convention Street, #700**
**Baton Rouge, LA 70802**
**(225) 387-0999**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Union Oil Company of California**

**Grady Joseph Abraham**
**Attorney at Law**
**5040 Ambassador Caffery #200**
**Lafayette, LA 70508**
**(337) 234-4523**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
      **The Vermilion Parish School Board**

**Andrew M. Stakelum**
**King & Spalding**
**1100 Louisiana, Ste 4000**
**Houston, TX 77002**
**(713) 751-3200**
**COUNSEL FOR DEFENDANT/APPELLANT:**
      **Union Oil Company of California**

**Michael L. Heaton**
**Talbot, Carmouche & Marcello**
**17405 Perkins Road**
**Baton Rouge, LA 70810**
**(225) 400-9991**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
      **The Vermilion Parish School Board**

**Dylan T. Scully**
**Kean, Miller, LLP**
**400 Convention Str. Ste. 700**
**Baton Rouge, LA 70821**
**(225) 387-0999**
**COUNSEL FOR DEFENDANT/APPELLANT:**
      **Union Oil Company of California**

**Claire E. Juneau**
**Robert E. Meadows**
**King & Spalding, LLP**
**1100 Louisiana, Ste 4000**
**Houston, TX 77002-5213**
**(713) 751-3200**
**COUNSEL FOR DEFENDANT/APPELLANT:**
      **Union Oil Company of California**

**ORTEGO, Judge.**

For the reasons assigned in *State of Louisiana and the Vermillion Parish School Board v. Louisiana Land & Exploration Company, et al.*, 23-550 (La.App. 3 Cir. 02/__/25), ___So.3d ___, handed down this day, the following Decree is provided in this consolidated matter:

## DECREE

Appellant, Union Oil Company of California, raises three assignments of error. We find no merit to any assignment raised. As such, we affirm the trial court's 2023 judgment in its entirety. The costs of these proceedings, including this appeal, are assessed to Union Oil Company of California.

**AFFIRMED.**

**STATE OF LOUISIANA AND THE VERMILION PARISH SCHOOL BOARD**

**VERSUS**

**LOUISIANA LAND & EXPLORATION COMPANY, ET AL**

**SAVOIE, Judge, concurs in part with reasons:**

I agree with the majority's decision in this matter but write separately to address this court's previous ruling in *State v. La. Land & Expl. Co.*, 2023-591 (La. App. 3 Cir. 11/15/23) 2023 WL 7754114, *writ denied,* 2023-1619 (La. 2/6/24), 378 So.3d 754, which denied VPSB's motion to dismiss the instant appeal. While I dissented in that matter, after reconsideration of the issue and with the benefit of the entire record, I agree with the conclusion that the judgment at issue is appealable for the reasons set forth by Judge Ortego in the current matter.